UNITED STATES of America, Plaintiff–Appellant,

v.

Keith Rudolph LUDWIG, Defendant–Appellee.

National Association of Criminal Defense Lawyers, Amicus Curiae.

No. 93–2084.

United States Court of Appeals, Tenth Circuit.

Dec. 1, 1993.

Rehearing Denied Feb. 2, 1994.

1524

David Williams, Asst. U.S. Atty. (Don J. Svet, U.S. Atty., and Stephen R. Kotz, Asst. U.S. Atty., on the brief), Albuquerque, NM, for plaintiff-appellant.

Charles A. Harwood (James B. Foy, on the brief), Foy, Foy & Castillo, P.C., Silver City, NM, for defendant-appellee.

Peter Schoenburg, Rothstein, Donatelli, Hughes, Dahlstrom, Cron & Schoenburg, Albuquerque, NM, for amicus curiae.

Before MOORE, FEINBERG,* and ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

The United States appeals the denial of its motion to reconsider the district court's suppression order. The government argues that the challenged dog sniff of Keith Ludwig's car was not a search under the Fourth Amendment, and that no warrant was required to search the car after the dog alerted. We agree and reverse.

## BACKGROUND

At about 11:15 p.m. on December 12, 1992, Joel Nickles, a Border Patrol agent at the permanent checkpoint near Truth or Consequences, New Mexico, walked a trained narcotics dog through the parking lot of the nearby Super 8 Motel to see if the dog would find any contraband. R. Vol. II at 5–6, 16. Less than a week earlier the motel manager had given the Border Patrol permission to walk dogs through the motel parking lot for this purpose. R. Vol. II at 40–41.

As Nickles and the dog were walking through the lot, the dog pulled Nickles over to Keith Ludwig's Chevrolet Impala and alerted to the trunk, indicating that illegal drugs were in the trunk. R. Vol. II at 7. Around half an hour later Border Patrol agents began surveillance of the car, which continued through the night until Ludwig first approached his car the next morning at 10:00 a.m.

Agent Phillip Sanchez, who had been surveilling the car, approached Ludwig five minutes later and identified himself. Ludwig acknowledged that the car was his, but denied the agent's requests to inspect the car and look in the trunk. Sanchez then directed Nickles to have the dog sniff the car again, and the dog again alerted to the trunk.

---

* The Honorable Wilfred Feinberg, United States Circuit Judge, Second Circuit Court of Appeals, sitting by designation.

When Ludwig refused to open the trunk, Sanchez took the keys from the ignition, opened the trunk, and found several large bags containing marijuana. R. Vol. II at 32–33.

Ludwig was indicted for possession with intent to distribute less than fifty kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D). After pleading not guilty, Ludwig moved to suppress all the evidence seized by the Border Patrol agents. The district court held an evidentiary hearing but did not hear Ludwig's evidence, granting the motion after the government's evidence on the grounds that the agents should have sought a search warrant because there were no exigent circumstances. R. Vol. II at 44–45. The court subsequently denied the government's motion to reconsider, from which the government appeals.

## DISCUSSION

### I. Search of Parking Lot

■ Nickles' entry into the motel parking lot with the dog was a search under the Fourth Amendment if it intruded on a legitimate expectation of privacy. *See Rakas v. Illinois,* 439 U.S. 128, 143 & n. 12, 99 S.Ct. 421, 430 & n. 12, 58 L.Ed.2d 387 (1978); *United States v. Reed,* 733 F.2d 492, 501 (8th Cir.1984) ("Whether a police officer has commenced a 'search' turns not on his subjective intent to conduct a search and seizure, but rather whether he has in fact invaded an area [in] which the defendant harbors a reasonable expectation of privacy."). Ludwig "bears the burden of proving not only that the search ... was illegal, but also that he had a legitimate expectation of privacy [in the parking lot]." *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980). Ludwig has not proven that he or even the motel owner had a legitimate expectation of privacy in the lot. As the surveillance from across the street indicates, the parking lot was open and visible from the public roads bordering it. Ludwig has produced no evidence that the lot was fenced, that a gate prevented unauthorized entry, or even that signs restricted entry to the parking lot. Neither the owner nor a guest could reasonably expect that such a parking lot would be private. *See, e.g., Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."); *United States v. Dunkel,* 900 F.2d 105, 107 (7th Cir.1990) (explaining that even though parking lot was curtilage of private office, defendant did not have legitimate expectation of privacy in parking lot that was open to invitees of eight tenants and was not fenced), *vacated on other grounds,* 498 U.S. 1043, 111 S.Ct. 747, 112 L.Ed.2d 768 (1991); *United States v. Reed,* 733 F.2d at 501 (holding that police officer's initial entry into business parking lot was not a search where lot was bound on three sides by public streets and visible from streets on two sides, fenced gate was completely open to public street, and there was no indication that lot was private to owners and those specifically authorized); *United States v. Edmonds,* 611 F.2d 1386, 1388 (5th Cir.1980) (finding no legitimate privacy expectation in business loading dock and parking lot). The entry into the parking lot therefore was not a search.

■ Ludwig suggests that he had a separate privacy interest in some portion of the parking lot that he rented along with his room for the night. Even if Ludwig did rent a parking space with his room, he would have no more expectation of privacy in a particular parking space than he or the motel owner had in the lot generally. His parking space was open to the street just as the rest of the lot was, as well as open and visible from the rest of the parking lot where the agents entered lawfully with the motel manager's consent. *See United States v. Burns,* 624 F.2d 95, 100 (10th Cir.) ("Nor is it a search when a law enforcement officer makes visual observations from a vantage point he rightfully occupies. This applies also to perceptions derived from hearing or smelling."), *cert. denied,* 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980).

### II. Dog Sniff

■ Ludwig also suggests that the dog sniffs of his car were unreasonable searches

because the agents had no reason to suspect that there were drugs in his car. Although the Border Patrol generally knew that the motel was a staging area for smugglers, Nickles initially did not have any reasonable suspicion that Ludwig's car contained drugs. He entered the lot with the narcotics dog routinely to sniff all the cars in the lot, without any particular suspicion. This case thus presents the previously unanswered question whether random dog sniffing of vehicles and other objects without prior lawful detention or reasonable suspicion violates the Fourth Amendment. *See United States v. Morales–Zamora,* 914 F.2d 200, 205 (10th Cir.1990). We hold that even such random and suspicionless dog sniffs are not searches subject to the Fourth Amendment.[1]

■ The Fourth Amendment protects a subjective expectation of privacy only if society recognizes that expectation as reasonable or justifiable. *Oliver v. United States,* 466 U.S. 170, 177, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979). Regardless of whether Ludwig subjectively expected that the drugs in his trunk would not be smelled, society does not recognize that expectation as legitimate. As we observed in *Morales–Zamora,* "there is no intrusion on legitimate privacy interests (and hence no 'search') where the only information revealed is limited to contraband items." *Morales–Zamora,* 914 F.2d at 204–05; *see also Jacobsen,* 466 U.S. 109, 123–24, 104 S.Ct. 1652, 1661, 80 L.Ed.2d 85 (1984) (holding that a chemical test that reveals only whether a substance is cocaine is not a search because it reveals no private fact other than whether the substance is contraband); *United States v. Place,* 462 U.S. 696, 706–07, 103 S.Ct. 2637, 2663, 77 L.Ed.2d 110 (1983) (holding that dog sniff is not a search because it is unique in that it does not intrude on or disclose any information other than whether contraband is present); *United States v. Colyer,* 878 F.2d 469, 474 (D.C.Cir. 1989) ("[A] possessor of contraband can

maintain no legitimate expectation that its presence will not be revealed."). This is no less true where the authorities had no basis for suspecting or detaining the person or his car. We therefore hold that the dog sniff of Ludwig's car was not a search.

### III. Search of Trunk After Dog Alert

#### A. *Probable Cause to Search*

■ Ludwig suggests that dog sniffs are not as reliable as courts often assume, and therefore the dog alert did not give the agents probable cause to open and search Ludwig's trunk. He also suggests that the district court's denial of the reconsideration motion implied a factual finding that the dog alerts were unreliable and thus did not give probable cause. We do not think the district court implied such a finding, but clearly based its order on the belief that a warrant was required. We therefore review this contention de novo, and conclude that the dog alert did give the agents probable cause to search Ludwig's trunk.

■ Probable cause means that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Although Ludwig cites several cases of mistaken dog alerts, a dog alert usually is at least as reliable as many other sources of probable cause and is certainly reliable enough to create a "fair probability" that there is contraband. We therefore have held in several cases that a dog alert without more gave probable cause for searches and seizures. *See Morales–Zamora,* 914 F.2d at 205 ("We need not reach the issue of consent because probable cause to search was supplied when the dog alerted to the vehicles."); *United States v. Stone,* 866 F.2d 359, 364 (10th Cir. 1989) ("Once the dog 'keyed,' the police had probable cause to believe the automobile contained narcotics."); *United States v. Williams,* 726 F.2d 661, 663 (10th Cir.) (declaring that dog alert to luggage alone gives

---

[1]. Of course, the government agent may not unlawfully enter an area in order to conduct such a dog sniff. The physical entry itself may intrude on a legitimate expectation of privacy. This requires separate analysis, however, and we have explained above that the agents' entry into the parking lot and Ludwig's parking space did not intrude on a legitimate expectation of privacy and therefore was not a search under the Fourth Amendment.

**1528**

probable cause for arrest), *cert. denied,* 467 U.S. 1245, 104 S.Ct. 3523, 82 L.Ed.2d 830 (1984); *cf. Blair v. Commonwealth,* 181 Ky. 218, 204 S.W. 67, 68 (1918) (stating that bloodhound evidence "was looked upon with favor as early as the twelfth century" and relating the declaration of Richard I of England: "Dress yonder Marquis [who had stolen the banner of England] in what peacock robes you will, disguise his appearance, alter his complexion with drugs and washes, hide himself amidst a hundred men; I will yet pawn my scepter that the hound detects him"). A dog alert might not give probable cause if the particular dog had a poor accuracy record, but the evidence shows that the dog in this case has never falsely alerted. R. Vol. II at 13.

Ludwig also questions whether there ever was a dog alert giving probable cause for the search of his trunk. He argues that the first dog alert could not give probable cause because surveillance was not constant and because of the passage of time before the search. The second alert, he contends, was not sufficiently reliable because Nickles and Sanchez gave different accounts of the alert. As to the first alert, we do not think the half hour between the alert and the beginning of surveillance resulted in less than a fair probability that there were drugs in the car as indicated by the dog alert. The passage of time alone is irrelevant, since the drugs would remain in the car unless someone removed them. As to the second alert, Sanchez testified that he did not know how dogs alerted, was not watching the dog that closely, and may not have remembered exactly what the dog did while sniffing and alerting. Nickles, the dog's handler, testified that he knows how his dog alerts and that his dog did so after the second sniff. The factual discrepancies between their accounts do not support the conclusion that the alert never happened or was itself unreliable.

B. *Search of Trunk Without Warrant*

Finally, Ludwig argues and the district court held that the search was unreasonable because the agents did not first obtain a warrant. We review this conclusion of law de novo. *United States v. Lugo,* 978

F.2d 631, 634 (10th Cir.1992). We hold that no warrant was required.

A warrantless search of an automobile is reasonable if there is probable cause to believe it contains contraband. *United States v. Ross,* 456 U.S. 798, 809, 102 S.Ct. 2157, 2165, 72 L.Ed.2d 572 (1982). The district court incorrectly reasoned that this exception does not apply if there was no apparent exigency in a particular case. Although the automobile exception is based in part on exigency, "the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant." *Michigan v. Thomas,* 458 U.S. 259, 261, 102 S.Ct. 3079, 3081, 73 L.Ed.2d 750 (1982) (per curiam) (footnote omitted). Ludwig argues that this case is controlled by *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (holding unreasonable the warrantless search of a car in a driveway after suspect was arrested). *Coolidge* differs in several significant respects, however, the most important of which is that in *Coolidge* the suspect had been arrested before the search, whereas Ludwig was arrested after the search. Unlike Coolidge, Ludwig could have driven off before the search. The agents were not required to detain him and the car while they sought a warrant to open the trunk. *See Chambers v. Maroney,* 399 U.S. 42, 51–52, 90 S.Ct. 1975, 1981–82, 26 L.Ed.2d 419 (1970) (holding that police were not required to detain car while seeking warrant to search it). The warrantless search of Ludwig's car therefore is not unreasonable even if there was little or no risk that Ludwig or a confederate would come out of the motel and drive away. If police have probable cause to search a car, they need not get a search warrant first even if they have time and opportunity. *United States v. Crabb,* 952 F.2d 1245, 1246 (10th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1981, 118 L.Ed.2d 579 (1992).

Ludwig also suggests that the auto exception does not apply here because his car was neither on the highway nor was it "readily capable of such use and ... found stationary in a place not regularly used for residential purposes—temporary or otherwise." *California v. Carney*, 471 U.S. 386, 392, 105 S.Ct. 2066, 2070, 85 L.Ed.2d 406 (1985). He presumably admits that the car was readily capable of use on the highway, but apparently contends that it was in a place regularly used for temporary residential purposes. If so, Ludwig misunderstands *Carney*. The question is only whether the "vehicle was so situated that an objective observer would conclude that it was being used not as a residence, but as a vehicle." *Id.* at 393, 105 S.Ct. at 2070. Ludwig's car itself was obviously not being used as a residence. Nothing about the car itself suggested that it was being used as a residence, nor was it the type of vehicle commonly used as a residence. Furthermore, it was parked at a motel, suggesting that the driver was residing in the motel rather than the car. A motel parking lot is not the type of place one typically might park a vehicle that he is going to use as a residence.

IV. Remand for Ludwig's Evidence

The district court did not hear Ludwig's evidence at the suppression hearing. Ludwig asks that if we reverse we remand so that he may present his evidence. Appellee's Br. at 22. We agree that Ludwig should be given an opportunity to present his evidence. *See Fulton v. L & N Consultants, Inc.*, 715 F.2d 1413, 1421 (10th Cir.1982) (suggesting that the court should remand for further evidence where the trial court prematurely stopped the presentation of evidence because it was already sufficient to support a ruling that proved to be erroneous).

We therefore reverse the district court's denial of the motion to reconsider its suppression order and remand for further proceedings consistent with this opinion.