STATE of Wisconsin, Plaintiff-Respondent,

v.

Alvaro Jose GARCIA, Defendant-Appellant.†

Court of Appeals

*No. 94–2573–CR. Submitted on briefs May 2, 1995.—Decided May 31, 1995.*

(Also reported in 535 N.W.2d 124.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Martin A. Blumenthal* and *Elliott T. Price* of Chicago, Illinois.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general and *Sharon Ruhly*, assistant attorney general.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

WEDEMEYER, P.J. Alvaro Jose Garcia appeals from a judgment of conviction, after pleading guilty, to possession with intent to deliver a controlled substance (cocaine), party to a crime, contrary to §§ 161.16(2)(b)1, 161.41(1m)(cm), and 939.05, STATS.[1] Garcia claims the trial court erred in denying his motion to suppress because: (1) the use of a dog to sniff his automobile that was parked in the motel parking lot violated his rights under the Fourth Amendment;[2] and (2) the trial court erred in finding that Garcia consented to a search of his entire motel room. Because the dog sniff in this case does not constitute a "search" and because the trial court's finding that the search was consensual was not clearly erroneous, we affirm.

## I. BACKGROUND

In November 1993, Milwaukee Police Detectives Frederick Leffler and Al Wilke, were assigned to the Drug Interdiction Unit, Vice Control Division of the Milwaukee Police Department. On November 1, as a part of their regularly assigned duties, the detectives were routinely patrolling train stations, bus stations, hotels and motels looking for vehicles with license

---

[1] A defendant may appeal from an order denying a motion to suppress evidence even though the judgment of conviction rests on a guilty plea. Section 971.31(10), STATS.

[2] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

plates from states known for drug trafficking. While on patrol through the parking lot of the Red Roof Motel, located near Mitchell International Airport, the detectives noticed a 1993 Nissan with Florida license plates. The detectives ran a check on the license plate and learned that the car was registered to a Mr. Garcia of Miami, Florida. The detectives had their drug detection dog, named "Zig/Z" sniff the vehicle. Zig/Z alerted to the rear of the vehicle, indicating the presence of illegal drugs. Leffler entered the motel lobby and asked the motel's front desk clerk to check to see if any of the motel guests were Florida residents. Leffler learned that a Mr. Garcia was registered in room 144. Wilke returned Zig/Z to their vehicle and the detectives proceeded to room 144.

They knocked on the door, and Victor Diaz, an occupant of the room, pulled back the curtains from the window. At this point, the detectives showed Diaz their badges and stated "Police Officers." Diaz opened the door. The detectives again displayed their badges, stated that they were police officers, and requested permission to come in to speak with the occupants. The detectives both testified that Garcia, who was rising from the bed closest to the door, told the police detectives to "come in."

Leffler testified that he asked Garcia whether they could search the entire room and his luggage and that Garcia replied, "Go ahead" and gestured toward the luggage. Wilke confirms Leffler's testimony on this issue. Garcia, however, claims he only gave the detectives consent to search his luggage. The detectives observed several bags of cocaine, some on the floor next to the dresser area, and some on the sink. Both Garcia and Diaz were arrested and charged. Garcia filed a

72

motion to suppress the evidence, which was denied.[3] Garcia pleaded guilty. He now appeals.

## II. DISCUSSION

*A. Does a dog sniff constitute a search?*

Garcia raises an issue of first impression in Wisconsin: whether using a specially trained drug detection dog to sniff the airspace around a vehicle parked in a motel parking lot constitutes a "search" within the meaning of the Fourth Amendment's proscription against unlawful searches and seizures.

Whether a search or seizure has occurred is a question of law subject to *de novo* review. *State v. Richardson*, 156 Wis. 2d 128, 137-38, 456 N.W.2d 830, 833 (1990). A "search" under the Fourth Amendment occurs when the police infringe on an expectation of privacy that society considers reasonable. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Garcia "bears the burden of proving . . . that he had a legitimate expectation of privacy [in the airspace around his unoccupied, parked automobile]." *State v. Rewolinski*, 159 Wis. 2d 1, 13-16, 464 N.W.2d 401, 405-06 (1990), *cert. denied*, 500 U.S. 909 (1991). Garcia cites *United States v. Thomas*, 757 F.2d 1359 (2d. Cir.), *cert. denied*, 474 U.S. 819 (1985), in an attempt to satisfy his burden. The *Thomas* court held that using a dog to sniff outside the door to the defendant's apartment constituted a search. *Id.* at 1366-67. Garcia reasons that the

---

[3] Although the trial court granted Garcia's motion to suppress with respect to certain items of evidence and certain statements, neither party addresses the items ordered suppressed. Therefore, we construe Garcia's appeal to be limited to those items the trial court refused to suppress.

*Thomas* case is analogous—that the *Thomas* court's finding that a legitimate expectation of privacy exists in the airspace outside the door of an apartment should lead this court to conclude that Garcia had an expectation of privacy in the airspace around his car, which was parked in a motel parking lot. We are not persuaded.

The instant case does not involve a dog sniff of an individual's private dwelling. Garcia parked his car in a parking lot that was open and visible from the roads surrounding it. The police detectives routinely patrol this parking lot. There is no evidence in the record that access to the parking lot was restricted in anyway. We conclude, therefore, that Garcia could not reasonably expect that the parking lot would be private. *See Katz v. United States*, 389 U.S. 347, 351 (1967) (what a person knowingly exposes to the public is not a subject of Fourth Amendment protection).

Garcia also contends that his legitimate expectation of privacy in the motel room that he rented for the night, *see Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990), extends to the parking space that he rented along with the room. Garcia offers no legal authority on point and we are unable to locate any legal authority to support Garcia's claim. Instead, we note that both the Sixth and the Tenth Circuits have addressed this precise contention and both courts rejected it. *See United States v. Diaz*, 25 F.3d 392, 396 (6th Cir. 1994) (expectation of privacy in motel room does not extend to parking lot); *United States v. Ludwig*, 10 F.3d 1523, 1526 (10th Cir. 1993) (even if a particular parking space was rented with the motel room, there is no expectation of privacy in that parking space). We, in

turn, reject Garcia's argument and conclude that there is no legitimate expectation of privacy in the air space around a car that is parked in a motel parking lot. Accordingly, the dog sniff in this case did not constitute a search that was within the scope of the Fourth Amendment.

*B. Consent to Search.*

Garcia next claims the trial court erred in determining that he consented to a search of his motel room. The State responds that Garcia consented to the search. The trial court found that consent was in fact given.

Whether consent was given and the scope of the consent are questions of fact that we will not overturn unless clearly erroneous. *State v. McKinney*, 168 Wis. 2d 349, 356, 483 N.W.2d 595, 598 (Ct. App. 1992).

Both detectives testified at the suppression hearing that Leffler asked Garcia if he would give them permission to search his luggage and the room area. Both detectives testified that Garcia responded, "go ahead. I have nothing to hide," and gestured in the direction of the luggage. Garcia, however, denied that he consented to the search. The trial court found the detectives' testimony more credible. Because the trial court is the sole judge of credibility, this court will not reverse a credibility determination unless we could conclude, as a matter of law, that no finder of fact could believe the testimony. *State v. Wind*, 60 Wis. 2d 267, 275, 208 N.W.2d 357, 363 (1973). The record amply demonstrates that the detectives' testimony could be believed. Both detectives were under oath, offered consistent accounts of Garcia's consent, and were seasoned

veterans of the police force. Based on the foregoing, we conclude that the trial court's finding that consent was given to search the entire motel room is not clearly erroneous.

Garcia also argues that the detectives' search commenced prior to obtaining consent. The trial court's decision does not contain an express finding in this regard, but clearly implies that consent was obtained prior to commencement of the search. *See Sohns v. Jensen*, 11 Wis. 2d 449, 453, 105 N.W.2d 818, 820 (1960) (appellate court may assume a missing finding on an issue was implicitly made in favor of supporting the judgment). Leffler testified that Wilke was standing five feet away from him while Leffler was requesting permission to search and that Wilke interrupted Leffler's search of the luggage to point to the bags of cocaine. It is undisputed that Leffler did not begin the search of the luggage until consent was obtained. Accordingly, the trial court's implied finding that consent was obtained prior to the commencement of the search is not clearly erroneous.

*By the Court.*—Judgment affirmed.

SULLIVAN, J. *(concurring)*. I agree with the majority's conclusion that Alvaro Jose Garcia's judgment of conviction should be affirmed. Majority op. at 71. I further agree with the majority's analysis concerning the lack of any legitimate expectation of privacy in the air space surrounding an unoccupied automobile, parked in a public motel parking lot. Majority op. at 73–75. I write separately, however, solely to address the underlying and additional question of whether a canine "sniff" test is a "search" within

76

the meaning of the Fourth Amendment to the United States Constitution.[1] As the majority notes, Garcia's challenge to his conviction "raises an issue of first impression in Wisconsin." Majority op. at 73. While the majority then concludes that "the dog sniff in this case does not constitute a 'search,' " *see* majority op. at 71, the majority does not specifically address the unique nature of the canine "sniff" test as applied within the framework of the Fourth Amendment.[2] This omission should be rectified.

As stated by one commentator:

> In recent years police have made extensive use of specially trained dogs to detect the presence of explosives or, more commonly, narcotics. These dogs are utilized in checking persons and effects crossing the border into the United States, luggage accompanying persons travelling by airline or bus, freight shipped by airline, and the contents of vehicles and storage facilities. In light of the careful training which these dogs receive, an "alert" by a dog is deemed to constitute probable cause for an arrest or search if sufficient showing is made as to

---

[1] Garcia bases his appeal solely on an alleged violation of the Fourth Amendment to the United States Constitution. He does not make a concomitant challenge under Article I, Section 11 of the Wisconsin Constitution. I note, however, that the rights recognized in Article I, Section 11 are coextensive with those in the Fourth Amendment. *State v. Fry,* 131 Wis. 2d 153, 171-76, 388 N.W.2d 565, 573-75, *cert. denied,* 479 U.S. 989 (1986).

[2] I realize that the majority wishes to resolve the case "on the narrowest possible grounds," *see State v. Blalock,* 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989); however, because this is a case of first impression in Wisconsin, I believe further background and discussion of the canine "sniff" test is necessary.

the reliability of the particular dog used in detecting the presence of a particular type of contraband. The more difficult question, which is of primary concern here, is whether such use of "canine cannabis connoisseurs" or similarly trained dogs itself constitutes a search so as to be subject to the limitations of the Fourth Amendment.

1 WAYNE R. LaFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 2.2(f) at 366-67 (2d ed. 1987) (footnotes omitted).[3] Our supreme court has never spoken on this issue,[4] and the United States Supreme Court has directly addressed this issue only once.

In *United States v. Place*, 462 U.S. 696 (1983), the Court discussed the use of a canine "sniff" test on "seized" luggage at an airport, stating:

We have affirmed that a person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment. A "canine sniff" by a well-trained narcotics detection dog, however, does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as

[3] For an overview of the development of the law concerning canine "sniff" tests see William M. FitzGerald, Comment, *The Constitutionality of the Canine Sniff Search: From* Katz *To Dogs*, 68 MARQ. L. REV. 57, 64-82 (1984). *See also* Stefan Epstein, Annotation, *Use of Trained Dog to Detect Narcotics or Drugs as Unreasonable Search in Violation of Fourth Amendment*, 31 A.L.R. FED. 931 (1977 & Supp. 1994).

[4] A different panel of this court tangentially discussed the issue of "canine" sniff tests on a challenge to police use of a infrared-sensing device to detect heat emanating from marijuana cultivation lamps in the defendant's basement. *See State v. McKee*, 181 Wis. 2d 354, 361-62, 510 N.W.2d 807, 810 (Ct. App. 1993) (comparing heat-sensing devices to drug "sniffing dogs").

does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.

In these respects, the canine sniff is sui generis. We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. *Therefore, we conclude that the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a "search" within the meaning of the Fourth Amendment.*

*Id.* at 707 (emphasis added; citation omitted). The general holding of *Place* has become firmly established in many jurisdictions: The "sniff" search of an inanimate object does not constitute a search within the meaning of the Fourth Amendment.[5] *Place*, of course, left many open questions. The foremost of which is whether a canine "sniff" search of a person, or objects within the immediate possession of a person, falls within the definition of a Fourth Amendment "search." We, however,

---

[5] *See* FitzGerald, *supra* note 3, at 81 (discussing uniformity of federal courts on canine "sniff" cases).

need not address this question in the principle case because the police subjected only the exterior of Garcia's unoccupied automobile to the nasal perusal of "Zig/Z," the drug detection dog.

I agree with the conclusion of most jurisdictions that the mere imposition of a canine's trained "olfactory genius" to the exterior of an inanimate object, and more specifically, the exterior of an automobile, does not constitute a search within the meaning of the Fourth Amendment. *See United States v. Rodriguez-Morales,* 929 F.2d 780, 788 (1st Cir. 1991), *cert. denied,* 502 U.S. 1030 (1992). *See also United States v. Seals,* 987 F.2d 1102, 1106 (5th Cir.) ("A dog 'sniff' is not a search."), *cert. denied,* 114 S. Ct. 155 (1993); *United States v. Morales-Zamora,* 914 F.2d 200, 203-05 (10th Cir. 1990) (canine "sniff" of vehicle is not a search subject to Fourth Amendment scrutiny); *United States v. Coyler,* 878 F.2d 469, 474-76 (D.C. Cir. 1989) (canine "sniff" of train sleeper compartment from public corridor not a search within the meaning of Fourth Amendment); *State v. Morrison,* 500 N.W.2d 547, 554 (Neb. 1993) (postal inspector subjecting package to canine "sniff" was not a search); *State v. Fikes,* 616 So. 2d 789, 791 (La. Ct. App. 1993) ("sniff" by well-trained narcotics dog is not a search within the meaning of the Fourth Amendment). But, as many jurisdictions have also recognized, while the canine "sniff" test may not in itself be a search within the meaning of the Fourth Amendment, the police conducting the test must still have properly gained access to the inanimate object in question before they can subject it to the canine inspection.[7] The detectives in the case at bar had properly

---

[7] *See United States v. Ludwig,* 10 F.3d 1523, 1527 n.1 (10th Cir. 1993) ("[T]he government agent may not unlawfully enter an area in order to conduct such a dog sniff."); *United States v.*

need not address this question in the principal case because the police subjected only the exterior of Garcia's unoccupied automobile to the nasal perusal of "Zig/Z," the drug detection dog.

I agree with the conclusion of most jurisdictions that the mere imposition of a canine's trained "olfactory genius" to the exterior of an inanimate object, and more specifically, the exterior of an automobile, does not constitute a search within the meaning of the Fourth Amendment. *See United States v. Rodriguez-Morales,* 929 F.2d 780, 788 (1st Cir. 1991), *cert. denied,* 502 U.S. 1030 (1992).[6] But, as many jurisdictions have also recognized, while the canine "sniff" test may not in itself be a search within the meaning of the Fourth Amendment, the police conducting the test must still have properly gained access to the inanimate object in question before they can subject it to the canine inspection.[7] The detectives in the case at bar had properly

---

[6] *See also United States v. Seals,* 987 F.2d 1102, 1106 (5th Cir.) ("A dog 'sniff' is not a search.") *cert. denied,* 114 S. Ct. 155 (1993); *United States v. Morales-Zamora,* 914 F.2d 200, 203-05 (10th Cir. 1990) (canine "sniff" of vehicle is not a search subject to Fourth Amendment scrutiny); *United States v. Coyler,* 878 F.2d 469, 474-76 (D.C. Cir. 1989) (canine "sniff" of train sleeper compartment from public corridor not a search within the meaning of Fourth Amendment); *State v. Morrison,* 500 N.W.2d 547, 554 (Neb. 1993) (postal inspector subjecting package to canine "sniff" was not a search); *State v. Fikes,* 616 So. 2d 789, 791 (La. Ct. App. 1993) ("sniff" by well-trained narcotics dog is not a search within the meaning of the Fourth Amendment).

[7] *See United States v. Ludwig,* 10 F.3d 1523, 1527 n.1 (10th Cir. 1993) ("[T]he government agent may not unlawfully enter an area in order to conduct such a dog sniff."); *United States v.*

gained access to the automobile because it was located in a public parking lot.

The acknowledgment that there is a diminished expectation of privacy with regard to an automobile operated on a public highway is firmly entrenched in Fourth Amendment jurisprudence. *See, e.g., California v. Carney,* 471 U.S. 386, 390-93 (1985). As such, an automobile does not carry with it the same degree of Fourth Amendment protective scrutiny as that of a person's home or apartment. *See United States v. Thomas,* 757 F.2d 1359, 1366-67 (2d. Cir) (canine "sniff" search outside defendant's apartment door constituted search subject to Fourth Amendment limitations), *cert. denied sub nom., Fisher v. United States,* 474 U.S. 819 (1985). Accordingly, the exterior of an automobile located in an easily accessible, public[8] location carries with it no "legitimate expectation of privacy." *See United States v. Jacobsen,* 466 U.S. 109, 113 (1984) ("A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed."). Further, society does not accord a motel's public parking lot greater expectations of privacy simply because the automobile's owner or operator rented a room at that motel. *See United States v. Diaz,* 25 F.3d 392, 396 (6th Cir. 1994) ("[M]otel

---

*Rodriguez-Morales,* 929 F.2d 780, 788 (1st Cir. 1991) (stating "canine sniff of exterior of vehicle which is *legitimately within the custody of the police* is not a search" (emphasis added)), *cert. denied,* 502 U.S. 1030 (1992).

[8] The public location of an object is fundamental to the question of whether a subsequent canine "sniff" test is a search. *See United States v. Place,* 462 U.S. 696, 707 (1983) ("[E]xposure of respondent's luggage, *which was located in a public place,* to a trained canine—did not constitute a 'search' within the meaning of the Fourth Amendment." (Emphasis added.)).

guests [have] no reasonable expectation of privacy in the motel's parking lot."); *United States v. Ludwig,* 10 F.3d 1523, 1526 (10th Cir. 1993) (concluding that motel parking space rented with room carries with it no more expectation of privacy than that of the parking lot in general).

Accordingly, in the case at bar, Garcia's 1993 Nissan Maxima was parked in the open and publicly accessible parking lot at the Red Roof Inn. "[T]here is no legitimate expectation of privacy in the air space around a car that is parked in a motel parking lot." Majority op. at 75. Detectives Leffler and Wilke, and "Zig/Z" properly gained access to the exterior of Garcia's car in their routine patrol of motel parking lots near the airport. As such, "Zig/Z"'s subsequent "sniff" test was proper and gave the police reasonable suspicion to further investigate Garcia. I conclude that Garcia's Fourth Amendment rights were not violated and that the trial court made the proper ruling at the suppression hearing.