**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**JIBARO NIBBS, Defendant**

Crim. No. F371/05

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

August 3, 2006

KAREN MCDOWELL, ESQ., Assistant Attorney General, Department of Justice, St. Thomas, V.I., *Attorney for Plaintiff.*

ANNA H. PAIEWONSKY, ESQ., The Handy Legal Group. P.L.L.C., St. Thomas, V.I., *Attorney for Defendant.*

KENDALL, *Judge*

## MEMORANDUM OPINION

(August 3, 2006)

THIS MATTER came on for Hearing on Defendant's "Motion to Suppress" physical evidence seized from Defendant in connection with his arrest for various weapons and drug violations. The Court heard testimony from Police Officers Mario Brooks, Jason Jackson, and Ecedro Lindquist. Based upon the reasons set forth below, the Motion will be granted.

## I. FACTUAL BACKGROUND

Police Officer Jason Jackson testified that on September 1, 2005, at approximately 7:00 p.m., he was off-duty when he received a telephone call from a private citizen informing him that drugs were being sold at the Smith Bay Texaco Gas Station by its employees who were armed at the present time. He also testified that he knew the citizen and believed the caller because he had "heard before they sell drugs from that gas station," even though on cross-examination, he testified that he had never received information from the caller previously regarding criminal activity. Upon receiving the information, he called Sgt. Dwayne DeGraff, supervisor of the Police Department's Special Operations

21

Bureau (SOB), and relayed the information to him. The caller provided no description of the employees, including race, height, clothing, etc.

After receiving the call, Sgt. DeGraff proceeded to the scene, accompanied by Officer Brooks and other S.O.B. officers. Officer Brooks testified that when they arrived, they exited the vehicle and approached the Defendant. Sgt. DeGraff told Defendant to put his hands on the gas pump, touched him on his waist then yelled "gun". He secured the Defendant's hands while Sgt. DeGraff removed a handgun from his waist. Officer Brooks asked the Defendant if he was licensed to possess a firearm in the Virgin Islands. He replied in the negative. Defendant was then handcuffed, advised of his rights and escorted to the police vehicle. He was "frisked" by Officer Brooks and a small "dime bag" of marijuana was found on his person.

This testimony is contrary to Sgt. DeGraff's sworn statement executed less than one (1) week after the incident in which he fails to mention that Defendant reached for his waist or that he or any officer yelled "gun." (Aff. Dwayne DeGraff, Sept. 7, 2005, ¶ 5.) The Affidavit merely states that "upon arrival ... [he] frisked Jibaro Nibbs and while doing so, [he] removed a .45 caliber pistol and Officer M. Brooks removed three (3) dime bags of marijuana from his person."[1] (*Id.* at ¶ 4.) Additionally, in the "Probable Cause Fact Sheet," which was sworn to by Sgt. DeGraff the day after the incident, he makes no mention of Defendant reaching for his waist or any officer yelling "gun." It simply states that "[he] made contact with Mr. Nibbs and a .45 Cal. semi automatic pistol was removed from Defendant's groin area." Furthermore, during Defendant's "Advice of Rights" Hearing, held on September 2, 2005, Sgt. DeGraff testified on direct examination that "we went to the gas station. Officer Braithwaite's vehicle approached Mr. Martin and my vehicle, I approached Mr. Nibbs. ... I approached Mr. Nibbs and asked him to go behind the one gas pump and executed a frisk and found a gun later found to be [.]45 semi-automatic pistol in his groin area."

Officer Ecedro Lindquist testified that he was summoned by Sgt. DeGraff to perform a K-9 investigation. Upon arrival, he commanded his police dog "Zeus" to "find dope." He and Zeus then proceeded to the office where Zeus alerted to a black bag with drugs on a shelf. Officer

---

[1] This is contrary to Officer Brooks' testimony that he recovered *a* small "dime" bag of marijuana.

Lindquist then asked Defendant if he was the operator of any of the vehicles parked in the compound. When Defendant replied "yes", Officer Lindquist inquired if he had any narcotics in his vehicle "he would like to tell us about" since he was going to do a K-9 search. Defendant said "yes" and when asked where, he replied "in the back of the car." Defendant then "gave us the keys" and "permission to go in the car". Zeus "hit" on the vehicle's trunk, in which was found more narcotics that later tested positive for marijuana. On September 7, 2005 Defendant and a second person, Mr. Akimo Martin, were charged with various weapons and drug violations.[2] By Order dated March 21, 2006, the Court granted the People's "Motion to Dismiss" the charges against Mr. Martin based upon their contention that they could not prove the case against him beyond a reasonable doubt.

On May 23, 2006, Defendant moved to suppress all evidence seized by the police contending, *inter alia,* that his Fourth Amendment rights against unreasonable search and seizure were violated when the police relied solely on an anonymous tip to arrest him. In their Opposition, the People contended, *inter alia,* that Sgt. DeGraff saw Defendant reach for his waist, thus giving him reasonable suspicion to frisk him.

## II. APPLICABLE LAW

The Fourth Amendment prohibits "unreasonable searches and seizures ..." U.S. CONST. Amend IV; *see also, Harris v. United States,* 331 U.S. 145, 150, 67 S. Ct. 1098, 1101, 91 L. Ed. 1399 (1947). "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez,* 473 U.S. 531, 537, 105 S. Ct. 3304, 3308, 87 L. Ed. 2d 381 (1985). "[T]he general rule [is] that warrantless searches are presumptively unreasonable ..." *Horton v. California,* 496 U.S. 128, 133, 110 S. Ct. 2301, 2306, 110 L. Ed. 2d 112 (1990). The Courts have, however, fashioned exceptions to the general rule, recognizing that in

---

[2] Specifically, Defendant was charged with "Possessing an Unlicensed Machine Gun," in violation of Title 14 V.I.C. § 2253(b); "Possessing an Unlicensed Firearm with an Altered or Obliterated Serial Number," in violation of Title 14 V.I.C. § 2253(a) and Title 23 V.I.C. § 481 (b); two counts of "Possessing an Unlicensed Firearm," in violation of Title 14 V.I.C. § 2253(a); three counts of "Possession of Ammunition," in violation of Title 14 V.I.C. § 2256(a); and "Possession of Marijuana with Intent to Distribute," in violation of Title 19 V.I.C. § 604(a).

certain limited situations, the Government's interest in conducting a search without a warrant, outweighs the individual's privacy interest. *Id.,* *See also, Montoya de Hernandez, supra,* at 537-541, 105 S. Ct. 3308-3311. A *Terry* "stop and frisk" is one such exception. *See Terry v. Ohio,* 392 U.S. 1, 20-22, 88 S. Ct. 1868, 1879-1881, 20 L. Ed. 2d 889 (1968).

■ *Terry* and cases which follow it make clear that "an officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S. Ct. 673, 675, 145 L. Ed. 2d 570 (2000).

■ In *Alabama v. White,* 496 U.S. 325, 325, 110 S. Ct. 2412, 2413-2414, 110 L. Ed. 2d 301 (1990), the Supreme Court "considered whether an anonymous informant's tip would provide reasonable suspicion for a *Terry* stop" and adopted the "totality of the circumstances" test to make such a determination, "stress[ing] two factors: (1) an officer's ability to corroborate significant aspects of the tip and (2) the tip's ability to predict future events." *See, United States v. Roberson,* 90 F.3d 75, 77 (3d Cir. 1996).

When Defendant was approached by Sgt. DeGraff and told to "put his hands on the gas pump", he was clearly "stopped" since it suggested to any reasonable person that Defendant was not free to leave. *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980). When considered in light of the foregoing factors, this stop was clearly illegal.

### III. EVALUATION OF ANONYMOUS TIP

#### (a) Lack of Corroboration

With respect to the first factor, there is nothing in the record indicating that any of the Officers, including Sgt. DeGraff, made any attempt to corroborate the anonymous tip that drugs were being sold at the gas station or that the Defendant was in fact an employee of the gas station. Nor was there any testimony that the Officers in fact knew that Defendant was an employee of the gas station. Sgt. DeGraff simply approached Defendant based on the tip because he was present at the scene. Moreover, assuming, *arguendo,* the veracity of his testimony during Defendant's "Advice of Rights" Hearing that "both individuals were armed with guns on their person at the present time of the call," he

24

had no reason to believe that Defendant was involved in criminal activity based on the call. As noted by the Court in *U.S. v. Ubiles*, 224 F.3d 213, 217 (3d Cir. 2000), "it is not necessarily a crime to possess a firearm in the Virgin Islands, *see* V.I.C. CODE ANN. Tit[le] 23[] § 470; nor does a mere allegation that a suspect possesses a firearm, as dangerous as firearms may be, justify an officer in stopping a suspect absent the reasonable suspicion required by *Terry*[.]"

Furthermore, no credence can be accorded Officer Brooks' testimony that he heard Sgt. DeGraff yell "gun". As noted heretofore, in none of the three (3) sworn statements by Sgt. DeGraff concerning Defendant's arrest, did Sgt. DeGraff testify as such.[3] Indeed, Officer Brooks' testimony that Sgt. DeGraff removed a firearm from Defendant's waist is inconsistent with the seizure of the .45 semi-automatic pistol from Defendant's "groin area"[4] as testified to by Sgt. DeGraff.

Furthermore, during the "Advice of Rights" Hearing, Sgt. DeGraff testified that he did not observe any bulge in Defendant's waist. Nor was there any testimony that Defendant was engaged in criminal activity when the Officers approached him. In fact, during the "Advice of Rights" Hearing, Sgt. DeGraff testified that when he approached Defendant, "he was working I guess doing his job." However, assuming the veracity of Officer Brooks' testimony, Defendant's mere reaching for his waist, without more, did not justify the search and the seizure of the firearm.

Having determined that no credence can be accorded the testimony of Officer Brooks that upon approaching the Defendant he reached for his waist, there is nothing in the record that warrants the conclusion that Sgt. DeGraff had reasonable suspicion to either stop and frisk or search Defendant. As the Third Circuit stated in *Roberson, supra,*

> We hold that the Police do not have reasonable suspicion for an investigative stop when, as here, they receive a fleshless

---

[3] These sworn statements are: The "Probable Cause Fact Sheet"; his testimony during Defendant's "Advice of Rights" Hearing and his "Affidavit" dated September 7, 2005.

[4] It is also inconsistent with the People's version of the facts. In reciting the "Facts" in their "Response to Defendant's First Motion to Suppress", the People state that "as they approached the Defendant, the Officers observed the Defendant flinch, moving his hand toward his waist area. DeGraff ... placed his own hands on the same area of the Defendant's waist ... felt a gun on Defendant's waist and yelled out 'gun'. DeGraff then held onto the gun on Defendant's waist, and removed a .45 semi-automatic pistol."

anonymous tip of drug dealing that provides only readily observable information, and they themselves observe no suspicious behavior.

*Id.* at 80.

■ In the absence of any corroboration of the anonymous tip by Sgt. DeGraff or Officer Brooks, the People have failed to satisfy the first factor required to establish reasonable suspicion for the stop of Defendant and the seizure of the firearm and marijuana from him.

## (b) The Tip was Non-Predictive.

■ With respect to the second factor, the information provided to Officer Jackson by the anonymous caller contained no details of Defendant's future actions ordinarily not easily predicted. Nor did the Officers [have] any basis for assessing either the reliability of the informant or the grounds on which the informant believed that a crime was being committed.[5] "Thus, no future action could be corroborated, and an important basis for forming reasonable suspicion was absent." *Roberson, supra* at 80.

It is to be noted that the "Police were not powerless to act on the non-predictive anonymous tip they received. The Officers could have set up surveillance of the Defendant ... if the Officers then observed any suspicious behavior or if they had observed suspicious behavior as they approached the Defendant in this case, they would have had appropriate cause to stop—and perhaps even arrest—him." *Id.* at 80-81. Here, as in *Roberson,* the non-predictive anonymous tip failed to satisfy the second factor, thus reasonable suspicion to stop Defendant did not exist.

As with the firearm seized from Defendant, the marijuana seized by Officer Brooks from Defendant was the result of the same unlawful stop of Defendant. Officer Brooks testified that after Sergeant DeGraff removed the firearm from Defendant's waist, Defendant was handcuffed, advised that he was under arrest, advised of his rights and "frisked,"

---

[5] See also, *Florida v. J.L.,* 529 U.S. 266, 274, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000) where the Supreme Court held that "an anonymous tip lacking indicia of reliability ... does not justify a stop and frisk whenever and however it alleged the illegal possession of a firearm." Here, as in *J.L.,* all the police had to go ... on was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." *Id.* at 271, 120 S. Ct. 1379.

whereupon a "small dime bag" was taken from him. Having determined that the Officers lacked reasonable suspicion to stop and frisk Defendant, the marijuana, being the "fruit of the poisonous tree" must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 487-488, 835 S. Ct. 407, 417, 9 L. Ed. 2d 441 (1963).

## IV. THE CANINE SNIFF WAS ILLEGAL

Officer Ecedro Lindquist testified that on the day in question, he was summoned by Sergeant DeGraff to the gas station. He arrived there with his K-9 dog "Zeus" and commanded "Zeus" to find dope. During the "Advice of Rights" Hearing, Sgt. DeGraff testified that "the dog went into the business and hit on a nylon bag inside the business and the bag contained a large amount of marijuana. It had money and it had a Mac-11 machine gun in that bag and none of the individuals claimed it. We placed them under arrest and charged them with that also. The dog also did an inspection of both individuals' vehicles. With Mr. Nibbs' vehicle, the dog had an alert and marijuana was found in the trunk of his vehicle."

In *Katz v. United States*, 389 U.S. 347, 359, 88 S. Ct. 507, 515, 19 L. Ed. 2d 576 (1967), the Supreme Court interpreted the Fourth Amendment as protecting a person's privacy and not just his person, house, papers and effects. However, Courts have generally held that the use of a drug-trained dog to detect contraband is not a "search" under *Katz*. *See United States v. Place*, 462 U.S. 696, 697, 103 S. Ct. 2637, 2638, 77 L. Ed. 2d 110 (1983); *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir. 1999) (Drug sniff of the exterior of an automobile and U-Haul trailer is not a "search" under the Fourth Amendment.)

Notwithstanding the general rule that a dog sniff is not a "search", a dog sniff will not be upheld if the reason for the initial stop was not lawful. *See, City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S. Ct. 447, 449, 148 L. Ed. 2d 333 (2001).

As noted heretofore, the initial stop of Defendant was illegal since the totality of the circumstances negated any reasonable suspicion that Defendant was engaged in criminal activity. Because "Zeus" presence at the scene was a direct result of the illegal initial stop of Defendant and his subsequent illegal arrest, his sniff of the premises and Defendant's vehicle was illegal. *Edmond, supra.*

Moreover, there is nothing in the record showing that Defendant either actually or constructively possessed the bag in which the Mac-11

27

machine gun was found. The bag was not on Defendant's person but inside the gas station on a shelf well beyond the reach of Defendant. Both Defendants denied ownership of the bag and the Government has adduced no evidence that it was owned by Defendant Nibbs. Indeed, the bag could very well have been owned by other employees of the gas station or the owner himself. In the absence of any evidence linking the machine gun to Defendant, the Officers lacked probable cause to arrest and charge him with possession of same.

## V. DEFENDANT'S CONSENT TO THE SEARCH OF HIS VEHICLE WAS INVOLUNTARY

In opposing the Motion to Suppress, the People contend that "Defendant gave voluntary consent when he gave the police the keys to open his vehicle." During the "Advice of Rights" Hearing, Sgt. DeGraff testified that he did not have a search warrant to search Defendant's vehicle. "With Mr. Nibbs' vehicle the dog had an alert and marijuana was found in the trunk of his vehicle."

It is settled that one of the established exceptions to the requirement of both a search warrant and probable cause is a search that is conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-2044, 36 L. Ed. 2d 854 (1973). Even though Defendant's vehicle was searched without a warrant, probable cause arguably existed for the search. Specifically, a dog alert has been held as sufficiently reliable to create a fair probability that there is contraband. *United States v. Ludwig*, 10 F.3d 1523, 1527 (10th Cir. 1993), citing *United States v. Morales-Zamora*, 914 F.2d 200, 205 (10th Cir. 1990) ["We need not reach the issue of consent because probable cause to search was supplied when the dog alerted to the vehicles."]

As noted heretofore, however, the dog sniff was illegal because the initial stop of Defendant was illegal. Accordingly, there could have been no probable cause to search Defendant's vehicle based upon the dog sniff in this case.

In the absence of a search warrant or probable cause to search Defendant's vehicle, any consent given by Defendant to the officers to search his vehicle was required to be voluntary in order to pass constitutional muster. *Schneckloth, supra,* at 222-223, 93 S. Ct. 2045. "Voluntariness" must be determined from the totality of the circumstances and must be proven by the prosecutor by a preponderance of the

28

evidence. *Id. See also, United States v. Drayton*, 536 U.S. 194, 207, 122 S. Ct. 2105, 2113-2114, 153 L. Ed. 2d 242 (2002). Moreover, a consent must not be coerced, by explicit or implicit means or by implied threat or covert force. "No matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for an unjustified intrusion against which the Fourth Amendment is directed." *Schneckloth, supra,* at 228, 93 S. Ct. 2048.

At the time Defendant allegedly gave his consent to the search of his vehicle, he was under custodial arrest. At least six (6) police officers were present. Five (5), including Sgt. DeGraff, were S.O.B. officers who appeared at the scene in two (2) unmarked police vehicles. Officer Brooks testified that after Defendant was arrested he was taken to a police car. Even though he was advised of his rights, there is nothing in the record showing that he was informed of his right to refuse consent to the search although the People need not establish such knowledge as the *sine qua non* of an effective consent. *Schneckloth, supra,* at 228, 93 S. Ct. 2048.

The presence of at least six (6) police officers, presumably armed to the teeth, coupled with a K-9 dog was clearly coercive and the threat of overt force resulting from such a presence was real. Any consent given by Defendant under such circumstances must of necessity be viewed as "no more than a pretext for an unjustified intrusion," contrary to the Fourth Amendment. Accordingly, when viewed in light of the totality of the circumstances, the Court finds Defendant's consent to be invalid.

## VI. CONCLUSION

The Charges against Defendant all stem from a violation of his Fourth Amendment Right to be secure against unreasonable search and seizure. The anonymous tip that led to the charges against him was uncorroborated and lacking in any indicia of reliability and predictability. But for that tip, the Officers had no objective, independent basis to approach Defendant, stop him and seize and arrest him. Any contraband allegedly seized from him as a result thereof was in violation of his rights under the Fourth Amendment and must therefore be suppressed.