STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael A. MC KEE, Defendant-Appellant.†

Court of Appeals

*No. 92–3017–CR. Oral argument September 20, 1993.—Decided December 23, 1993.*

(Also reported in 510 N.W.2d 807.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *David L. Grace* of *Schmidt, Thibodeau & Grace* of Wisconsin Rapids.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Michael R. Klos*, assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J.   Michael Mc Kee appeals from a judgment convicting him of manufacturing tetrahydrocannabinols (marijuana) in his home.

He raises an issue of first impression: whether the use of an infrared sensing device to detect heat emanating from his residence constitutes a "search" within the meaning of the Fourth Amendment's proscription of unlawful searches and seizures. We conclude that it does not and affirm the conviction.

The facts are not in dispute. Wood County Sheriff's Department officers searched Mc Kee's home in late March 1992 pursuant to a warrant issued by the Wood County Circuit Court. The warrant was issued on the basis of an affidavit setting forth the following facts: A deputy sheriff went to the area of Mc Kee's home in the company of a "Counter-Drug Liaison Officer" from the Department of Military Affairs. The DMA officer had with him a "thermal imagery sight," a device used by the military to detect heat sources. Aiming the device toward Mc Kee's home while parked on an adjacent street, the officer reported that a portion of the basement area of the house "was emanating extreme amounts of heat" as compared to the upper floors and other residences in the immediate area.

The affidavit also stated that, according to agents of the Wisconsin Division of Narcotics Enforcement, strong lights are used in the indoor cultivation of marijuana, and such lights must operate continuously during periods of the plants' growth cycle, resulting in

increased electrical consumption and, by inference, increased heat within the building. Based on this and other information,[1] the warrant was issued, and the search and Mc Kee's arrest followed.

Mc Kee moved to suppress the evidence gathered in the search of his home, arguing that the use of the heat-sensing device was, in itself, a warrantless search in violation of his Fourth Amendment rights. As a result, he maintains that the warrant authorizing the later search of his house was constitutionally infirm as based on illegally obtained information.

At the hearing on the motion, the deputy sheriff, who prepared the affidavit for the warrant, testified that the DMA officer who viewed Mc Kee's home with the thermal imaging device did so from a vehicle parked on a public highway. He also testified that the device itself does not "shoot" a laser beam toward an

---

[1] The state argues that the affidavit contained sufficient information, independent of the thermal imaging evidence, to support the issuance of the search warrant: the affidavit stated that utility records showed much higher than normal electric usage at Mc Kee's residence, and that the sheriff's department had information from a confidential informant indicating that Mc Kee had told him he was growing marijuana in the house. Based on this, the state suggests that even if we were to hold that use of the heat-sensing device was improper, there is enough other evidence in the affidavit to support issuance of the warrant.

Mc Kee points out, however, that the affidavit indicates that the deputies' first contact with him was the incident involving the use of the thermal imaging device, and that the information from the electric company and the confidential informant was obtained later. As a result, and considering the "fruit-of-the-poisonous-tree" principle of *Wong Sun v. United States*, 371 U.S. 471 (1963), and similar cases, we decide Mc Kee's challenge to the use of the device on its merits.

object but merely facilitates visual observation of heat emanating from an object. It does so by measuring infrared emissions from the object's surface. The trial court denied the motion and Mc Kee appeals.

Cases on the subject are scarce. In *United States v. Penny-Feeney*, 773 F. Supp. 220 (D. Haw. 1991), *aff'd on other grounds sub nom. United States v. Feeney*, 984 F.2d 1053 (9th Cir. 1993), the district court considered a similar challenge to a search warrant based, in large part, on evidence of heat emanations from a residence gained through the use of an infrared heat-sensing device.[2] The device — a "forward looking infrared device" which, like the device used in this case, "detects differences in temperature on the surface of objects being observed" — was aimed at the defendants' residence from a helicopter flying over the property. The district court ruled that its use did not constitute a "search" under the Fourth Amendment. *Id.* at 228. Because the device "did no more than gauge and reflect the amount of heat that emanated [ ]from" the residence, the court reasoned that there was no intrusion into the premises and, further, that the defendants had no reasonable expectation of privacy in the escaping heat since they "in no way attempted to impede its escape or exercise dominion over it." *Id.* at 225-26.

Mc Kee argues that the *Penny-Feeney* analysis is inapposite because, in that case, the defendants made no attempt to contain the heat inside the building but actually vented it to the outside. He asserts that he, in contrast, had taped insulation over the windows, thus

---

[2] In *Penny-Feeney* there was evidence independent of that gained from the use of the heat-sensing device in the application for the warrant. The court, however, decided the issue on the merits: whether use of the device constituted a search within the meaning of the Fourth Amendment.

establishing an expectation of privacy with respect to any heat emanating from the basement and that, "[r]egardless of . . . rhetoric [to the contrary], the thermal imaging device measured activity within the home — within the sphere of privacy." We disagree.

First, the *Penny-Feeney* court concluded that, "even if defendants were capable of demonstrating a subjective expectation of privacy in the heat waste," there would be no Fourth Amendment violation because, as cases such as *California v. Greenwood*, 486 U.S. 35 (1988), suggest, "such an expectation [of privacy] would not be one that society would be willing to accept as objectively reasonable." *Penny-Feeney*, 773 F. Supp. at 226. In *Greenwood*, the United States Supreme Court considered whether the Fourth Amendment prohibits the warrantless search and seizure of bagged garbage left for collection outside a private residence. Noting that "[a]n expectation of privacy does not give rise to Fourth Amendment protection . . . unless society is prepared to accept that expectation as objectively reasonable," the Court concluded that the defendants could not have had any reasonable expectation of privacy "in the inculpatory items that they discarded." *Greenwood*, 486 U.S. at 39-41.

> [W]e conclude that [defendants] exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection. It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other

members of the public. *Greenwood*, 486 U.S. at 40 (footnotes omitted).[3]

Moreover, the *Penny-Feeney* court pointed to several United States Supreme Court cases holding that police utilization of "extra-sensory, non-intrusive" equipment to investigate persons and objects does not constitute a search. *Penny-Feeney*, 773 F. Supp. at 226 (citing *United States v. Place*, 462 U.S. 696 (1983) (using a trained dog to sniff luggage at an airport held not to be a search); *United States v. Knotts*, 460 U.S. 276 (1983) (placing a "beeper" in a container in order to track movements of a vehicle to a remote cabin held not to be a search); and *Smith v. Maryland*, 442 U.S. 735 (1979) (installing a "pen register" at the telephone company to record the numbers dialed from a suspect's home telephone held not to be a search)).

We appreciate that *Penny-Feeney* is a federal district court case which is not binding or precedential in this court. *Thompson v. Village of Hales Corners*, 115 Wis. 2d 289, 307, 340 N.W.2d 704, 713 (1983). We are, however, persuaded by the district court's analysis of the issue, as was the Arizona Court of Appeals in *State v. Cramer*, 851 P.2d 147 (Ariz. Ct. App. 1992). That court, relying on *Penny-Feeney*, held that the use of an

---

[3] We recognize that there are differences between escaping heat and items bagged and left at the curb for pickup and disposal, but we consider such differences to be only matters of degree. As we note below, we believe "odor" cases are analogous in terms of reasonable expectations of privacy, as would be a case of smoke, unusually bright lights, or loud noises emanating from a building. In any such situation, it is doubtful that an expectation of privacy in the smell, the smoke, the light or the noise, would be one "society [would be] prepared to accept . . . as objectively reasonable." *Greenwood*, 486 U.S. at 40.

infrared heat-sensing device as a basis for the issuance of a warrant to search for marijuana-manufacturing paraphernalia in a private residence did not constitute a search within the meaning of the Fourth Amendment. *Id.* at 150.

We believe that the heat emanating from Mc Kee's residence may be considered "waste," much as the refuse left outside the house in bags and cans in *Greenwood.* In both situations, the homeowner may be said to be disposing of waste matter in areas exposed to the public. In *Greenwood,* the exposure was visual, and the Supreme Court considered that that exposure was in no way diminished by the fact that the refuse was packaged in opaque bags. *Greenwood,* 486 U.S. at 39-40. The *Penny-Feeney* court, reaching a similar conclusion, stated: "Here, the exposure is heat-sensory and is in no way diminished by the fact that the source of the heat could only be detected by use of the [heat-sensing device]." *Penny-Feeney,* 773 F. Supp. at 226.

Mc Kee, arguing that we should not accept the *Penny-Feeney* court's reasoning, refers us to our comment in *State v. Lange,* 158 Wis. 2d 609, 622, 463 N.W.2d 390, 395 (Ct. App. 1990), where we upheld an aerial search of the defendant's property using vision-enhancing devices, but noted that "there must be a limit to the degree the government can intrude upon a person's home and curtilage with 'high-tech' equipment." We still hold to that view but see no improper intrusion in this case.

We consider *United States v. Solis,* 536 F.2d 880 (9th Cir. 1976), as highly instructive on the point. In that case a drug agent went to a trailer parked in a public area. Finding the trailer's doors partly covered with talcum powder — a precaution commonly used to

conceal the odor of marijuana — the agent employed trained dogs, whose sense of smell was eight times as acute as that of humans, to sniff odors in the area. When the dogs reacted positively, the police applied for and obtained a warrant to search the trailer and found a large amount of marijuana. The district court granted the defendant's motion to suppress, concluding that the warrantless detection of the marijuana by the dogs constituted an unlawful search which invalidated the warrant. The ninth circuit reversed, stating:

> There was an expectation that the odor would emanate from the trailer. Efforts made to mask it were visible. The method used by the officers was inoffensive. There was no embarrassment to or search of the person. The target was a physical fact indicative of possible crime, not protected communications. We hold that the use of the dogs was not unreasonable under the circumstances and therefore was not a prohibited search under the fourth amendment. *Id.* at 882-83.

█

Use of the type of heat-sensing device employed in this case is, like the sniffing dogs in *Solis* and *Place*, inoffensive. It entails no embarrassment to, or search of, the person. The heat sensor is not the type of "high-tech" highly sophisticated surveillance equipment which can intrude or peer into private places. It is a passive instrument, and the observations made in this case were gained by aiming it at the exterior of Mc Kee's house from a public roadway. Its use did not invade either the home or the curtilage, nor did it reveal to the investigators any of the inhabitants' activities within the walls of the house. Thus, the heat emanations it detected are comparable to the "odor

emanations" detected by the dog in *Solis*: "they constitute a physical fact indicative of possible crime, *not* protected communications." *Penny-Feeney*, 773 F. Supp. at 227 (emphasis in original).

*By the Court.*—Judgment affirmed.