STATE of Wisconsin, Plaintiff-Respondent,

v.

Albert JACKOWSKI, Defendant-Appellant.

Court of Appeals

*No. 00–2851–CR. Submitted on briefs May 4, 2001.—Decided July 26, 2001.*

2001 WI App 187

(Also reported in 633 N.W.2d 649.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Thomas E. Hayes*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Stephen W. Kleinmaier*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Vergeront, Roggensack and Deininger, JJ.

¶ 1. DEININGER, J. Albert Jackowski appeals a judgment convicting him of one count of possessing a short-barreled rifle and one count of possessing a firearm silencer, both felonies. Jackowski claims that the trial court erred by denying his motion to suppress evidence allegedly obtained as the fruits of an illegal search. We disagree and affirm Jackowski's convictions.

## BACKGROUND

¶ 2. An assistant building inspector for the City of Franklin applied for a special inspection warrant to inspect a residence owned by Jackowski for municipal building code violations. A municipal judge issued the warrant based on an affidavit submitted by the inspector which stated as follows:

> [The inspector], being duly sworn, under oath deposes and states. that he is an Assistant Building Inspector of the Inspection Department of the City, of . Franklin. That on the 1st day of March, 1999, in said

county in and upon certain premises in the City of Franklin, to-wit, 3842 West Puetz Road, there now exists a necessity to determine if said premises, including the interior of any buildings on the property, are in compliance with City of Franklin Municipal Code Sections 11.07(3), 11.07(2)(a) and 11.07(7)(a); all code sections for which the owners of the property have received municipal citations alleging violations and which are still pending in the City of Franklin Municipal Court and City of Franklin Municipal Code Sections 190–28 through 190–30 (private sewage system) and 178–5 (dilapidated building).

The facts tending to establish the grounds for issuing a special inspection warrant are as follows:

1. [The inspector], being duly sworn on oath, says that he is an Assistant Building Inspector for the Inspection Department of the City of Franklin.

2. That the purpose of the inspection is to follow up on citizen complaints regarding the above-mentioned alleged Building Code violations and to determine whether or not any other Code violations exist.

3. That upon information and belief, said conditions may currently exist.

4. That the premises are not a public building.

WHEREFORE, your affiant . . . prays that a special inspection warrant be issued to search such premises for the aforesaid purposes.

¶ 3. Two City of Franklin police officers accompanied three members of the Franklin Building Inspection Department to Jackowski's house to execute the special inspection warrant. According to the criminal complaint, the officers knocked several times before opening the door, which was unlocked. Upon entering

the house, the officers announced their presence several times, stating that they were there on a special inspection warrant. The officers first walked into the kitchen which was covered with more than a foot of refuse. The officers reported that the entire house was in an "extreme state of disarray." They walked throughout the house to see if anyone was in it, consistent with their purpose of providing security for the inspectors, but found no one.[1]

¶ 4. The officers observed numerous firearms scattered throughout the house "in plain view," including items which appeared to be short-barreled rifles and silencers. A special agent from the Federal Bureau of Alcohol, Tobacco and Firearms was called to the scene and confirmed that the items were short-barreled rifles and silencers, and that possession of these weapons violated Wisconsin law. Based on what they observed while assisting in the execution of the inspection warrant, the police obtained a criminal search warrant from a court commissioner to search for and seize the illegal weapons.

¶ 5. Several Franklin police officers executed the search later that evening, seizing firearms and other contraband. The State subsequently charged Jackowski with two counts of possessing a short-barreled rifle in violation of Wis. Stat. § 941.28(2) (1999–2000),[2] and three counts of possessing a firearm silencer in violation of Wis. Stat. § 941.298(2).

---

[1] The complaint recites a neighbor's statement that Jackowski had not lived in the house since 1997, but that he was observed visiting it several times a month.

[2] All references to Wisconsin Statutes are to the 1999–2000 version unless otherwise stated.

¶ 6. Jackowski moved to suppress the evidence seized in the execution of the criminal search warrant. The criminal warrant was issued based on information obtained during the execution of the inspection warrant, and Jackowski claimed the inspection warrant was defective because the application for it did not establish probable cause that code violations then existed on the premises. Jackowski also pointed to the lack of an allegation that he had refused consent to an inspection of the premises, as required under WIS. STAT. § 66.0119(2) ("[S]pecial inspection warrants shall be issued . . . only upon showing that consent to entry for inspection purposes has been refused.").[3] The circuit court denied Jackowski's motion to suppress, concluding that, although the inspection warrant did not meet the statutory requirement, the police had acted in good faith:

> I do find that there is a Fourth Amendment violation here because I have found . . . that that first warrant was defective. But I am going to go out on a limb here and find that the good-faith exception kicks in. . . . It's clear to me from this record that the Franklin city officials were really going after a dilapidated building and had apparently repeatedly gone after that building due to the pending municipal charge. . . . The City of Franklin police weren't doing anything unlawful. They were asked to accompany the inspector. They saw their municipal judge's inspection warrant. It appeared to be valid to them. Nobody would know that that warrant was defective on its face.

---

[3] The statute is a successor, effective January 1, 2001, to WIS. STAT. § 66.122 and .123 (1997–98). The language at issue in this case has not changed from the earlier version, which was in effect at the time the warrant for Jackowski's building was issued.

¶ 7. Following the denial of his motion, Jackowski pled guilty to two of the illegal weapons charges. He now appeals, citing as error the denial of his motion to suppress the evidence police seized following the inspection of his building.[4]

## ANALYSIS

¶ 8. Jackowski does not challenge the issuance of the criminal search warrant, conceding that when the police obtained it, they had probable cause to believe evidence of a crime would be found in his building. Jackowski argues, however, that the evidence seized should have been suppressed because the issuance of the criminal warrant was based exclusively on the officers' observations during the execution of the inspection warrant. He claims the initial building inspection warrant was unlawfully issued, and that without it, police would not have acquired the information which led to the issuing of the criminal warrant and the seizure of evidence.

¶ 9. When the issuance of a warrant is challenged on appeal, our focus is not on the trial court's decision to grant or deny a suppression motion but on the issuing magistrate's determination that the application for the warrant was sufficient to support its issuance. The person challenging the warrant bears the burden of

---

[4] Circuit Judge Kitty K. Brennan denied Jackowski's motion to suppress, following which the case was transferred to Circuit Judge Dennis P. Moroney, who subsequently entered the judgment which Jackowski appeals. *See* Wis. Stat. § 971.31(10) ("An order denying a motion to suppress evidence . . . may be reviewed upon appeal from a judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty.").

demonstrating that the evidence before the issuing magistrate was clearly insufficient. *Ritacca v. Kenosha County Court*, 91 Wis. 2d 72, 78, 280 N.W.2d 751 (1979). Even though a question of law is presented, our review of the magistrate's determination is not de novo, rather, we pay "great deference" to the magistrate's decision. *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *State v. DeSmidt*, 155 Wis. 2d 119, 132, 454 N.W.2d 780 (1990). The supreme court has explained that a deferential standard of review is " 'appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.' " *State v. Kerr*, 181 Wis. 2d 372, 379, 511 N.W.2d 586 (1994) (citations omitted).

¶ 10. A criminal search warrant may be issued only upon a finding of probable cause by a neutral and detached magistrate. *State v. Higginbotham*, 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991). In the case of a criminal search warrant, there must be probable cause to believe that objects linked to the commission of a crime are likely to be found in the place designated in the warrant. *State v. Ehnert*, 160 Wis. 2d 464, 470, 466 N.W.2d 237 (Ct. App. 1991). However, the constitutional standard for issuance of "administrative warrants," such as the "special inspection warrant" at issue in this case, is very different.

¶ 11. The U.S. Supreme Court in *Camara v. Municipal Court of the City and County of San Francisco*, 387 U.S. 523 (1967), explained the Fourth Amendment standards applicable to administrative building code inspections. The Court held that, absent consent, an inspection executed under an administrative code enforcement program requires a warrant, but administrative inspection warrants may be issued on a showing

other than probable cause to believe "a particular dwelling contains violations." *Id.* at 534. Rather, the Court concluded that,

> "probable cause" to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling. Such standards, which will vary with the municipal program being enforced, may be based upon the passage of time, the nature of the building . . . or the condition of the entire area, but they will *not* necessarily depend upon specific knowledge of the condition of the particular dwelling.

*Id.* at 538 (emphasis added).

¶ 12. The Seventh Circuit discussed *Camara's* holding and applied it to a Wisconsin city's "special inspection warrants" in *Platteville Area Apartment Ass'n v. City of Platteville*, 179 F.3d 574 (7th Cir. 1999). The court noted that

> *Camara* and the other decisions that allow the use of warrants for administrative or regulatory searches modify the conventional understanding of the Fourth Amendment's 'probable cause' requirement for warrants, since it is the essence of such searches that there is no probable cause to believe that a particular search will yield evidence of a violation of law.

*Id.* at 578. Thus, Jackowski's claim that the application for the inspection warrant was deficient because it did not establish probable cause to believe code violations then existed in his building is unavailing.

¶ 13. Jackowski does not challenge on appeal, nor did he in the trial court, the overall "reasonableness" of the City of Franklin's "regulatory package that includes compulsory inspections." *Platteville*, 179 F.3d at 578. We

thus deem him to have conceded the existence of "reasonable legislative or administrative standards" for conducting a building code enforcement inspection of his building. *Camara*, 387 U.S. at 538. Additionally, we observe that the application is made under oath and generally follows the "illustrative" format provided in WIS. STAT. § 66.0119(3). The applicant is identified as a person authorized to conduct building inspections in the City of Franklin. The code provisions to be enforced are cited, and the need for the current inspection is described: citizen complaints of code violations, as well as a determination of whether previously cited violations (pending in municipal court) are still present.

¶ 14. Given the deference we are to accord warrant-issuing magistrates, we conclude that the application presented sufficient information for the municipal judge to determine that the applicant was authorized under the city's building code to go into Jackowski's building for the purposes noted. Put another way, we conclude the special inspection warrant meets the *Camara* standard for issuance of an administrative inspection warrant.

¶ 15. Jackowski makes no claim, and there is nothing in the record to indicate, that the Franklin police used the building inspector as their "stalking horse," that is, that officers gained entry to Jackowski's building on a pretense in order to pursue a criminal investigation at a time when they lacked probable cause to obtain a criminal search warrant. *See State v. Hajicek*, 2001 WI 3, 240 Wis. 2d 349, 620 N.W.2d 781. Neither does Jackowski argue that the officers initially discovered the illegal weapons in locations that were other than "in plain view." *See Michigan v. Clifford*, 464 U.S. 287, 294 (1984) ("If evidence of criminal activity is discovered during the course of a valid administrative

search, it may be seized under the 'plain view' doctrine . . . [and also] may be used to establish probable cause to obtain a criminal search warrant."). Finally, no claim is made, nor facts presented to suggest, that the initial building inspection exceeded the scope of the special investigation warrant. *See Platteville*, 179 F.3d at 582 ("An inspection that did not involve rummaging through closets and bureau drawers would clearly be a reasonable method of enforcing the housing code.").

¶ 16. Jackowski does argue, however, that the seized evidence must be suppressed because the inspection warrant was unlawful in that it did not comply with WIS. STAT. § 66.0119(2), which requires that a "special inspection warrant" be issued "only upon showing that consent to entry for inspection purposes has been refused." The State responds that the municipal judge who issued the warrant could reasonably have inferred from the fact of the past code violations, that seeking Jackowski's consent to inspect would have been futile. We do not necessarily agree.

¶ 17. We accept, however, the State's alternative argument that refusal of consent is not a constitutional requirement for issuance of an administrative warrant, and suppression is not available as a remedy for a "mere" statutory violation. As we have recently explained, numerous Wisconsin "cases stand for the proposition that the exclusionary rule is applicable in civil and criminal proceedings only where the evidence sought to be excluded was obtained in violation of a constitutional right or a statute that specifically requires suppression of wrongfully or illegally obtained

evidence as a sanction." *State ex. rel. Peckham v. Krenke*, 229 Wis. 2d 778, 787, 601 N.W.2d 287 (Ct. App. 1999).[5]

¶ 18. We have discussed above the Fourth Amendment standard for the issuance of administrative inspection warrants, and a refusal of consent is not within it. When the Supreme Court noted in *Camara* that "it seems likely that warrants should normally be sought only after entry is refused," it was not discussing the requirements for warrant issuance. The Court was simply explaining, at the end of its opinion, why its holding would not prove unduly burdensome to municipal building code enforcement. *See Camara*, 387 U.S. at 539–40.[6] Thus, we conclude that the lack of an averment that consent to inspect had been refused is a statutory violation only, not an omission of constitutional dimension requiring suppression as a remedy. Finally, we note that WIS. STAT. § 66.0119 (or its predecessor, see footnote 3) does not specifically require suppression of any evidence obtained in violation of its provisions.

---

[5] See also *Cooper v. California*, 386 U.S. 58, 61 (1967):

[T]he question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment. Just as a search authorized by state law may be an unreasonable one under that amendment, so may a search not expressly authorized by state law be justified as a constitutionally reasonable one.

[6] The Court also noted, for example, that its holding did not preclude warrantless entries in emergency situations, and that "most citizens allow inspections of their property without a warrant." *Camara v. Municipal Court of the City and County of San Francisco*, 387 U.S. 523, 539 (1967).

¶ 19. In summary, we conclude that the issuance of the special inspection warrant authorizing a city building inspector to enter Jackowski's building to inspect for building code violations did not violate Jackowski's rights under the Fourth Amendment. No evidence of criminal wrongdoing obtained by police as a result of their accompanying the inspector need therefore be suppressed. Because we conclude that there was no Fourth Amendment violation, it is not necessary for us to decide, as the trial court did, that a "good faith exception" should apply on the present facts.[7]

## CONCLUSION

¶ 20. For the reasons discussed above, we affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.

---

[7] See *State v. Eason*, 2001 WI 98, ¶ 3, 245 Wis. 2d 206, 629 N.W.2d 625, where the supreme court held "that the good faith exception applies where the State has shown, objectively, that the police officers reasonably relied upon a warrant issued by an independent magistrate . . . [and] that the process used in obtaining the search warrant included a significant investigation and a review by either a police officer trained and knowledgeable in the requirements of probable cause and reasonable suspicion, or a knowledgeable government attorney."