STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeffrey L. LORANGER, Defendant-Appellant.†

Court of Appeals

*No. 00–3364–CR. Submitted on briefs November 8, 2001.—
Decided December 20, 2001.*

2002 WI App 5

(Also reported in 640 N.W.2d 555.)

† Petition to review denied 3-19-02.

200

Before Vergeront, P.J., Dykman and Roggensack, JJ.

¶ 1. DYKMAN, J.    Jeffrey Loranger appeals from a judgment of conviction for manufacturing a controlled substance, maintaining a building for the use of manufacturing controlled substances, and possessing a firearm as a felon. He filed a motion to suppress evidence seized at his home under a search warrant, which the circuit court denied. There are two primary issues. The first is whether suppression of evidence is the proper remedy when police performed a thermal image scan on Loranger's home without a warrant, relying in good faith upon our decision in *State v. McKee*, 181 Wis. 2d 354, 510 N.W.2d 807 (Ct. App. 1993). *McKee* held that no warrant was required. The second issue is whether sufficient facts were alleged in the affidavit supporting the search warrant to furnish a finding of probable cause.

¶ 2. *Kyllo v. United States*, 533 U.S. 27 (2001), held that use of a thermal imaging device to detect heat emanating from a home is a "search" within the meaning of the Fourth Amendment and thus presumptively unreasonable when performed without a warrant. Thus, officers violated the Fourth Amendment when, in 1999, they performed a thermal image scan on Loranger's home. However, because they relied upon *McKee*, which had concluded that use of a thermal imaging device was not a search, we conclude the evidence obtained in the search need not be suppressed. Further, we conclude that the results of the thermal image scan in combination with electricity records showing that Loranger used above average amounts of electricity, and a confidential informant's tip that he had seen marijuana growing in Loranger's basement, were sufficient to provide the warrant-issuing court commissioner with a substantial basis for finding probable cause to issue a warrant to search Loranger's house.

## Background

¶ 3. On May 6, 1999, Iowa County Deputy Sheriff Steve Bennett requested that the Iowa County court commissioner issue a warrant authorizing the search of Jeffrey Loranger's home. In his affidavit in support of the search warrant, Bennett stated that Special Agent Scott Jess had interviewed a confidential informant on April 19, 1999. The informant told Jess that approximately eighteen months ago, he had been in Loranger's house, and Loranger had shown the informant his "marijuana grow operation." The informant observed "two to three green children's turtle pools filled with approximately 60–80 marijuana plants each." In addition, the informant observed "six to seven shop lights

202

with cloned marijuana plants underneath them," one 1500 watt light bulb, and one 2000 watt light bulb.

¶ 4. The affidavit also stated that, based on this tip, Special Agent Jess and Special Agent Gregory Phillips conducted a "thermal imagery site assessment" outside Loranger's home on May 5, 1999. The thermal imagery device indicated that "an unusual amount of heat was emanating from the wall of the northeast and north corner of the residence" in the basement area, but not from the roof. Further, according to Phillips, this suggested that the "unusual and uneven heat" was generated by "indoor grow lights, which are utilized for the indoor cultivation of marijuana."

¶ 5. Finally, the warrant contained information regarding the electric power used at Loranger's residence as compared to "the average monthly kilowatt usage." For the period of May 1, 1998, to March 31, 1999, the affidavit alleged that, according to information provided by the Alliant Energy Company, the average monthly kilowatt hour usage at Loranger's home was 1464 kilowatt hours per month. Further, the affidavit alleged that the average monthly kilowatt usage for a residential home was between approximately 550 and 700 kilowatt hours per month.

¶ 6. The court commissioner issued the warrant, and police searched Loranger's home, after which the State charged Loranger with one count of manufacturing a controlled substance under WIS. STAT. §§ 961.41(1), 961.41(1)(h)1, and 961.14(4)(t), one count of maintaining a building for the use of manufacturing controlled substances under WIS. STAT. § 961.42(1), and five counts of possessing a firearm as a felon under WIS. STAT. § 941.29(1)(b). In response, Loranger moved to suppress all evidence obtained by the State as a result of the thermal search and the subsequent search of his

home. Loranger claimed that the warrantless thermal search was illegal and therefore could not provide probable cause to execute a warrant to search his home. In addition, Loranger filed a motion under *Franks v. Delaware*, 438 U.S. 154 (1978), to suppress the same evidence, arguing that the State had omitted facts from the affidavit in support of the search warrant that, if included, would have demonstrated that there was no probable cause to issue a warrant.

¶ 7.  The circuit court held evidentiary hearings on November 23, 1999, and February 1, 2000, after which it denied both of Loranger's motions. The court concluded that "the current position of Wisconsin authority holds that the use of a thermal imaging device . . . is not a search within the meaning of the Fourth Amendment," and that Loranger had not proven by a preponderance of the evidence that Bennett made intentional falsehoods or showed a reckless disregard for the truth in his affidavit. Finally, the court concluded that the affidavit contained sufficient facts to support a finding of probable cause.

¶ 8.  Loranger pleaded no contest to one count each of manufacturing a controlled substance, maintaining a building for the use of manufacturing controlled substances, and possessing a firearm as a felon. The circuit court sentenced Loranger to a total of five years in prison, but stayed the sentence pending appeal.

## Opinion

### A. *Thermal Search*

¶ 9.  Loranger first argues that the officers' use of a thermal imaging device to detect heat emanating from his home was a "search" within the meaning of the

Fourth Amendment and article I, § 11, and was therefore unlawful because it was conducted without a warrant. Loranger further asserts that the evidence obtained through the thermal search should have been suppressed. The question whether police conduct violated the Fourth Amendment or article I, § 11, is a question of constitutional fact. *See State v. Marquardt*, 2001 WI App 219, ¶ 9, 247 Wis. 2d 765, 635 N.W.2d 188. We review questions of constitutional fact independently of the circuit court. *See id.*

■

¶ 10.  We agree with Loranger that the use of a thermal imaging device to detect heat emanating from his home was a search under the Fourth Amendment and was therefore presumptively unreasonable. We disagree, however, that the evidence obtained through the search must be suppressed as a result.

¶ 11.  In *State v. McKee*, 181 Wis. 2d 354, 510 N.W.2d 807 (Ct. App. 1993), we considered "whether the use of an infrared sensing device to detect heat emanating from [a] residence constitutes a 'search' within the meaning of the Fourth Amendment." *Id.* at 356. Reasoning that heat emanating from a residence "may be considered 'waste,' " similar to "refuse left outside the house in bags and cans," and that heat sensing devices are similar to sniffing dogs in that they detect an object's interior in a non-intrusive manner, we concluded that it did not. *Id.* at 361–63. At the time *McKee* was decided, neither the Wisconsin nor the United States Supreme Court had addressed this issue.

¶ 12.  *McKee*, however, was implicitly overruled by *Kyllo v. United States*, 533 U.S. 27, 121 S. Ct. 2038 (2001). In *Kyllo*, an agent from the Department of the Interior used a thermal imaging device to detect heat emanating from the defendant's home without first

205

obtaining a warrant. *Id.* at 29-30. The Supreme Court held that this violated the Fourth Amendment. The Court rejected the United States' argument that thermal imaging is not a search because it detects "only heat radiating from the external surface of the house," reasoning that accepting such an argument would lead to a "mechanical interpretation of the Fourth Amendment," and "would leave the homeowner at the mercy of advancing technology." *Id.* at 35. The Court concluded: "Where, as here, the Government uses a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a 'search' and is presumptively unreasonable without a warrant." *Id.* at 40.

¶ 13. In accordance with *Kyllo,* we conclude that the State violated the Fourth Amendment when it used a thermal imaging device to detect heat coming from Loranger's home. *See State v. Pitsch,* 124 Wis. 2d 628, 641, 369 N.W.2d 711 (1985) (holding that Wisconsin courts are bound by Supreme Court's interpretations of the federal constitution). This does not end the inquiry, however. In *State v. Ward,* 2000 WI 3, 231 Wis. 2d 723, 604 N.W.2d 517, the supreme court concluded that police had violated the rule of announcement under the Fourth Amendment and article I, § 11, when they entered the defendant's residence with a no-knock warrant, contrary to *Richards v. Wisconsin,* 520 U.S. 385 (1997). *Id.* at ¶ 42. Nevertheless, because the police and the magistrate who issued the no-knock warrant relied upon the Wisconsin Supreme Court's decision in *State v. Richards,* 201 Wis. 2d 845, 549 N.W.2d 218 (1996), which was still good law when the magistrate issued the warrant, the supreme court concluded that

the evidence did not have to be suppressed. *Id.* at ¶ 52, 62. The court reasoned that the exclusionary rule is a " 'judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.' " *Id.* at ¶ 46 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). Because no remedial purpose would be served by excluding evidence "when the officers and magistrate followed, rather than defied, the rule of law," the evidence was deemed admissible. *Id.* at ¶ 52.

¶ 14. Applying the holding of *Ward* here, we must likewise conclude that the evidence obtained through the thermal imaging device is admissible. In May 1999 when police used the device to detect heat emanating from Loranger's home, *Kyllo* had not yet been decided, and *McKee* was applicable. Therefore, the police relied on *McKee* in good faith and suppressing the evidence would serve no remedial purpose. *But see United States v. Acker*, 2001 WL 1021587 (7th Cir. Aug. 9, 2001) (concluding that thermal imaging evidence obtained before *Kyllo* was decided must be suppressed).

¶ 15. Loranger contends that *Ward* is distinguishable because it involved "the issue of *how* a search should be conducted rather than *whether* the search itself is permissible." Although this observation is correct, there is no language in *Ward* to suggest its holding was limited to improperly issued no-knock search warrants. Rather, the court broadly stated that "we believe that law enforcement officers and magistrates must be allowed to reasonably rely upon the pronouncements of this court." *Id.* at ¶ 62. Although "this court" could be interpreted as meaning only the decisions of the supreme court and not the court of appeals, we see no logical reason to distinguish between published opinions of the court of appeals and the supreme court in

this context. Even the dissent in *Ward* recognized that the "majority opinion applies to any published opinion of the court of appeals or this court authorizing a search when the decision is later declared unconstitutional." *Id.* at ¶ 88 (Abrahamson, C.J., dissenting).

¶ 16. Loranger's reliance on the limitations of the holding in *State v. Eason*, 2001 WI 98, 245 Wis. 2d 206, 629 N.W.2d 625, is misplaced. In *Eason*, the supreme court held that "a good faith exception for objective, reasonable reliance upon a search warrant does not offend the Wisconsin Constitution." *Id.* at ¶ 52. Loranger argues that in this case, unlike *Eason*, there was no "objectively reasonable reliance upon [a] warrant, which had been issued by a detached and neutral magistrate." In addition, Loranger asserts that the State failed to meet its burden under *Eason*, to show that there had been a "significant investigation and a review by either a police officer trained and knowledgeable in the requirements of probable cause and reasonable suspicion, or a knowledgeable government attorney." *Eason* did not hold, however, that the State must show *both* that it relied upon Wisconsin case law *and* that it reasonably relied upon a search warrant. *Eason* does not address reliance on case law at all, but involved only reliance on warrants. The holding in *Eason*, therefore, does not apply here.

## B. *Franks Motion And Probable Cause*

¶ 17. The affidavit in support of the search warrant alleged that because strong lights are needed to grow marijuana indoors and these lights must operate continuously, those involved in the "indoor cultivation of marijuana" will use greater amounts of electricity than average. The affidavit also stated that Special

Agent Jess had reviewed records of Loranger's power usage, provided by Alliant Energy Company, from April 30, 1996, to March 31, 1999. According to the affidavit, Loranger's average monthly kilowatt hour usage was 914 kilowatt hours per month from April 30, 1996, to April 2, 1997, 1102 kilowatt per month from May 1, 1997 to April 1, 1998, and 1464 kilowatt hours per month from May 1, 1998, to March 31, 1999.

¶ 18. The affidavit also contained the following two paragraphs:

> Agent Jess has stated that he has reviewed documents provided by CEASE (Cannabis Enforcement and Suppression Effort) State Coordinator Stan Blazek. CEASE is a law enforcement program administered by the Wisconsin Department of Narcotics Enforcement that functions to eradicate cannabis.

> The first CEASE document, dated October, 1997, indicated that the average monthly kilowatt usage for a residential house in the Madison, WI regional area was 600 kilowatt hours per month. The second CEASE document, dated July 29, 1997, indicated the average monthly kilowatt usage for a single family residence was 708 kilowatt hours per month. The information contained in this document was provided to CEASE by Madison Gas & Electric Company. The third CEASE document, received by CEASE on August 22, 1997, indicated that the residential customers living within a village or city use approximately 560 to 600 kilowatt hours per month and residential customers living in a township have a slightly higher average of 650 kilowatt hours per month. The document indicated that individual conditions such as heat source and lifestyle will cause deviations from the above numbers. The information contained in the document was provided to CEASE by Wisconsin Power & Light.

¶ 19. Loranger asserts that the above paragraph contains "wrongful omissions," contrary to *Franks v. Delaware*, 438 U.S. 154 (1978). Under *Franks*, a court is obligated to suppress evidence obtained from a search if, at an evidentiary hearing, the defendant can establish by a preponderance of the evidence that the affidavit in support of the search warrant contained false statements made intentionally or with reckless disregard for the truth and that the false statements are necessary to a finding of probable cause. *Id.* at 156. Loranger argues that he satisfied this test by showing that the affidavit failed to point out the limitations of the electrical statistics that it relied upon.

¶ 20. In his brief in chief, Loranger points out that the documents the affidavit refers to do not: (1) disclose the month, season, or year on which the electric usage figures are based; (2) indicate that Arena, Wisconsin, which is the location of Loranger's home, is included in the figures; or (3) "provide any specifications for the size, type of construction, heating and cooling system, appliances and other furnishings, number of occupants, or other data for an average 'residential customer.' " In addition, he notes that the documents indicate that air conditioning or electric heating can increase energy consumption.

¶ 21. Although we agree with these observations, we disagree that they demonstrate the affidavit was made with reckless disregard for the truth. Rather, the affidavit accurately reflects the information that is contained in the documents. The affidavit does not allege that the statistics regarding average usage were specific to a particular season or year, or that they included Arena, Wisconsin. And the affidavit expressly points out that "individual conditions such as heat

source and lifestyle will cause deviations from the above numbers." The issue, therefore, is not whether the affidavit included false statements, but whether the electrical usage information contained in the affidavit, as limited as it was, supported a finding of probable cause.

▮▮▮▮▮

¶ 22. In our review of a warrant-issuing court commissioner's finding of probable cause, we accord "great deference," to the commissioner's determination. *State v. Multaler*, 2001 WI App 149, ¶ 24, 246 Wis. 2d 752, 632 N.W.2d 89. The test for the issuance of a search warrant is whether, considering the totality of the circumstances set forth in support of the warrant, probable cause exists to believe that objects linked to the commission of a crime are likely to be found in the place designated in the warrant. *State v. Jackowski*, 2001 WI App 187, ¶ 10, 247 Wis. 2d 430, 633 N.W.2d 649. The warrant-issuing court commissioner must be apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that the objects sought will be found in the place to be searched. *State v. Meyer*, 216 Wis. 2d 729, 742, 576 N.W.2d 260 (1998). The duty of a reviewing court is simply to ensure that the commissioner had a substantial basis for concluding that probable cause existed. *State v. Hanson*, 163 Wis. 2d 420, 423, 471 N.W.2d 301 (Ct. App. 1991).

¶ 23. Viewing the totality of the circumstances, we conclude that the issuing court commissioner had a substantial basis for concluding that probable cause existed. We agree with Loranger that the comparative statistics regarding Loranger's versus the "average" use of electricity could have been more specific. Not knowing exactly when or where the "average" figures were

extracted diminishes their value. Loranger does not challenge the veracity, however, of the information that was provided. The affidavit alleged that the average monthly kilowatt hour usage for Loranger's residence was 1464 kilowatt hours per month. This was more than double each of the comparative averages provided in the affidavit. It would not be unreasonable to infer that a disparity of 100% is unlikely to be explained based upon the year or what part of the state the statistics came from. Although these statistics would not be sufficient to support a finding of probable cause on their own, *see United States v. Field*, 855 F. Supp. 1518, 1520 (W.D. Wis. 1994), they are supported by the results of the thermal imaging scan, which were consistent with the heat generated by lights used to grow marijuana indoors.

¶ 24. In addition, the affidavit relied upon a tip from a confidential informant. Loranger contends that the warrant-issuing commissioner could not rely upon this tip because it was based on information almost eighteen months old. Although search warrants may not rest on stale evidence, *Sgro v. United States*, 287 U.S. 206, 210 (1932), whether evidence is "stale" is not determined "by counting the time 'between the occurrence of the facts relied upon and the issuance of the warrant.' " *Multaler*, 2001 WI App 149 at ¶ 28 (quoting *State v. Ehnert*, 160 Wis. 2d 464, 469, 466 N.W.2d 237 (Ct. App. 1991)). Rather, "timeliness depends on the nature of the underlying circumstances." *Ehnert*, 160 Wis. 2d at 469. Because marijuana growing is of a continuous nature, greater lapses of time are justified. *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991). Further, the combination of the informant's tip and the more recent electricity records and thermal

imaging results suggested that the operation was ongoing. *See State v. Moley*, 171 Wis. 2d 207, 213–14, 490 N.W.2d 764 (concluding that "old information" may be combined with "new data to create present probable cause"). In sum, we conclude that probable cause existed to believe that objects linked to the commission of a crime were likely to be found in Loranger's residence. *See United States v. Robertson*, 39 F.3d 891, 894 (8th Cir. 1994) (holding that detailed information supplied by an anonymous informant in combination with infrared readings furnished probable cause to issue search warrant of defendant's home).

    *By the Court.*—Judgment affirmed.