PER CURIAM.
¶1 James Johnston appeals from a judgment convicting him of two felony drug charges, as well as a misdemeanor offense, and from an order denying his postconviction motion. Johnston claims: (1) the circuit court erred by denying his motion to suppress evidence based upon a lack of probable cause to support the issuance of a search warrant; and (2) his trial counsel provided ineffective assistance because he failed to raise additional grounds for suppression. We reject each contention and affirm.
BACKGROUND
¶2 The search warrant affidavit at issue in this appeal contained the following averments. On April 3, 2015, the Brown County drug task force received an anonymous tip that Johnston was growing marijuana plants in his basement and selling marijuana. The tipster provided an address on Kathy Drive in Green Bay at which the tipster said Johnston was living with his girlfriend, Rebecca Vanderleest, and further advised that Johnston would be moving to a specified address on Saint Joseph's Street in De Pere on July 1, 2015.
¶3 On April 15, 2015, a Brown County sheriff's deputy and drug task force member obtained four garbage bags from a bin on the curb outside the house on Kathy Drive. In one of the bags, the deputy found packaging from a marijuana seed supplier with an image of a marijuana plant on it and a gem baggie of the type used to sell marijuana seeds, along with an envelope addressed generically to the resident of the Kathy Drive house.
¶4 On April 22, 2015, the deputy observed a "for rent" sign outside of the Kathy Drive house. On April 24, 2015, the deputy called the number on the sign and learned that the property was being shown and that the current renter would be moving out as soon as a new renter was found. On April 28, 2015, the deputy called the number on the sign again and learned that the property was no longer available for rent. The deputy subsequently obtained Department of Transportation (DOT) records showing that, by August 2015, Johnston had updated his address to the house on Saint Joseph's Street specified by the tipster. As of May 2016, Vanderleest had not updated her address.
¶5 On May 11, 2016, the deputy obtained three white garbage bags, one black garbage bag, and a grocery bag of trash from the driveway apron of the Saint Joseph's Street house. One of the white bags contained an envelope addressed to "The Johnston Household," while another contained a label addressed to "REBECCA VANDERL." The black bag contained a small amount of a green plant material that the deputy believed to be marijuana leaf trimmings and that tested positive for THC. The black bag also contained a number of items that the deputy's experience and training led him to believe were associated with growing marijuana hydroponically and packaging it for sale. These items included an empty Ziploc box, twenty-three drilled-out pieces of black plastic, packaging for fertilizer, a bottle for bacterial root inoculant, a bottle for plant sweetener, packaging for growing medium, and a user manual for an LED light fixture. In addition, there were three pieces of paper in the black bag with references on them that could be associated with growing marijuana, including information on cloning and the name of another company that sold marijuana seeds.
¶6 On May 24, 2016, the deputy reviewed records of the electricity use for Johnston's house on Saint Joseph's Street obtained from a Federal Drug Enforcement Administration agent pursuant to an administrative subpoena. The deputy found that the electricity use for the property had increased after the account was placed in Vanderleest's name in March 2015, and that between June 2015 and May 2016, the monthly electricity use for the property ranged between 27% and 185% higher than that of two comparably sized properties in the neighborhood. Based on the deputy's training and experience, such high-energy consumption was consistent with the pumps, fans, and grow lamps needed to power a hydroponic irrigation system for growing marijuana.
¶7 Based upon this affidavit, on May 25, 2016, the deputy sought and obtained a warrant to search the Saint Joseph's Street house. When police executed the warrant, they discovered and seized 188 marijuana plants, along with assorted drug paraphernalia. The week before trial was scheduled to begin, Johnston moved to suppress the seized evidence. He argued the search warrant affidavit failed to provide probable cause because: (1) the informant's tip was not sufficiently corroborated or reliable; and (2) there was an insufficient nexus between the evidence found in the garbage outside the Saint Joseph's Street house and the house itself.
¶8 The circuit court denied the suppression motion, both as untimely and on the merits, noting the existence of probable cause was "not even a close call" due to the anonymous tip, two garbage pulls, and increased electricity usage. Johnston then entered no-contest pleas to one count of a second or subsequent offense of possession of THC with intent to deliver, one count of a second or subsequent offense of maintaining a drug trafficking place, and one count of neglecting a child, in exchange for the dismissal of three other charges and a penalty enhancer.
¶9 After the circuit court had sentenced Johnston and entered the judgment of conviction, Johnston filed a postconviction motion seeking reconsideration of the suppression ruling. In this motion, Johnston argued that counsel should have filed the suppression motion earlier and should have challenged the probable cause determination on the additional grounds that: (1) the anonymous tip and the first trash pull from the Kathy Drive house were stale; (2) there was no confirmed information that Johnston was residing in the Kathy Drive house at the time of the first trash pull; (3) the utility records were obtained by unlawful means; (4) the energy usage was not, in and of itself, sufficiently high to raise suspicion; and (5) the deputy omitted from his affidavit other relevant information that would have undermined a probable cause determination. The circuit court denied the reconsideration motion. Johnston now appeals, renewing his claims from both the original suppression motion and the motion for reconsideration.
DISCUSSION
A. Probable Cause to Support the Search Warrant
¶10 A search warrant may be issued only upon a showing of probable cause. State v. Romero , 2009 WI 32, ¶16, 317 Wis. 2d 12, 765 N.W.2d 756. The standard for determining whether probable cause exists is based upon the totality of the circumstances. Id. , ¶17. The judge must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. , ¶19. Due to the strong preference for searches conducted pursuant to a warrant, a reviewing court will defer to a judge's issuance of a warrant "unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause." State v. Silverstein , 2017 WI App 64, ¶13, 378 Wis. 2d 42, 902 N.W.2d 550.
¶11 Here, Johnston raises a series of challenges to individual pieces of information contained in the search warrant affidavit. We will address each of those arguments in turn before discussing whether all of the circumstances set forth in the affidavit, taken together, are clearly insufficient to support a finding of probable cause.
1. Reliability of Anonymous Tip
¶12 Johnston first challenges the information given by the anonymous tipster, arguing that the affidavit contained insufficient evidence to establish the tipster's veracity or basis of knowledge. The veracity of a hearsay declarant and the basis of the declarant's knowledge are not separate and independent requirements for finding probable cause but, rather, are highly relevant and intertwined factors to be used in determining the value given to a declarant's report in considering the totality of the circumstances. Illinois v. Gates , 462 U.S. 213, 230 (1983). Thus, a deficiency in one area may be compensated for by a strong showing as to the other, or by some other indicia of reliability. Id. at 233.
¶13 It is true that the search warrant affidavit in this case does not explain how the tipster came to know that Johnston was growing marijuana in the basement of the Kathy Drive house. Nor was there any indication that the tipster had previously provided accurate information to the police. However, the information provided in the tip was corroborated in three respects: (1) the marijuana seed packaging recovered from the trash outside the Kathy Drive house; (2) DOT records showing that Vanderleest lived at the Kathy Drive house; and (3) Johnston's plan to move from the Kathy Drive house and the exact address of the house on Saint Joseph's Street to which he subsequently moved.
¶14 The tipster's accurate prediction of Johnston's future move and address suggested that the tipster knew Johnston well enough to be aware of his activities. The DOT records showing that Vanderleest lived at the Kathy Drive address partially supported the tipster's assertion that Johnston and Vanderleest were living there. The discovery of the marijuana seed packaging in trash outside of the Kathy Drive house was consistent with the allegation that marijuana was being grown in the basement of that house. We therefore determine that the corroboration of portions of the tipster's information provided sufficient indicia of reliability for the judge who issued the warrant to be able to consider the tip as one part of the totality of the circumstances supporting probable cause.
2. Nexus between Johnston and the Kathy Drive House
¶15 Johnston next claims that the marijuana seed packaging recovered from the garbage bag outside the Kathy Drive house does not support a probable cause determination because "there was no confirmed evidence in the affidavit connecting the Kathy Drive residence to Johnston." As we have just explained above, however, the judge could properly consider the information provided in the anonymous tip as part of its analysis. The tipster's statement that Johnston was living in the Kathy Drive house with his girlfriend Vanderleest was sufficient to link Johnston with the house. Therefore, the circuit court could properly consider the evidence recovered from the garbage bag outside the Kathy Drive house as part of the totality of the circumstances supporting probable cause.
3. Staleness
¶16 Johnston further challenges use of the information from the tipster and the evidence recovered from the garbage outside the Kathy Drive house on the grounds of staleness. This argument is misplaced because it is not individual pieces of evidence in a search warrant affidavit that are examined for staleness, but rather probable cause as a whole. See State v. Moley , 171 Wis. 2d 207, 213, 490 N.W.2d 764 (1992) (defining "stale probable cause" as that which "would have justified a warrant at some earlier moment that has already passed by the time the warrant is sought").
¶17 In any event, whether probable cause is stale is not determined merely by the amount of time that has passed between the occurrence of any individual facts relied upon and the issuance of the warrant. State v. Loranger , 2002 WI App 5, ¶24, 250 Wis. 2d 198, 640 N.W.2d 555 (2001) (citations omitted). Rather, the timeliness of the totality of the information offered in support of a search warrant depends upon the underlying circumstances. Id. Greater lapses of time are justified with a continuing crime, such as growing marijuana, in which old and new information may properly be considered together. Id.
¶18 The information set forth in the affidavit in this case pointed to a marijuana-growing operation that had been continued for over one year. The probable cause was not stale because the second trash pull demonstrated that the operation was still ongoing only two weeks before the application for the search warrant was made. Therefore, the judge issuing the warrant could properly consider the information from the tipster and the Kathy Drive garbage pull as not impermissibly stale.
4. Nexus between the Black Garbage Bag and the Saint Joseph's Street House
¶19 Johnston also argues that it was unreasonable to infer that the evidence recovered from the black garbage bag on the curb outside of the Saint Joseph's Street house actually came from the Saint Joseph's Street house. He cites a case from Illinois for the proposition that "police may not presume that the evidence they discover[ed] [in a trash bag on a curb] originated from the nearest residence." People v. Burmeister , 728 N.E.2d 1260, 1265 (Ill. App. Ct. 2000). Johnston further relies on a case from Kansas for the proposition that proof of residence found in one garbage bag on a curb cannot be automatically linked to contraband found in another garbage bag on the same curb, without some additional information, such as a witness, who saw the garbage placed on the curb. State v. Malone , 323 P.3d 188, 194 (Kan. Ct. App. 2014). Johnston urges this court to adopt the holdings of Burmeister and Malone . We decline to do so.
¶20 We agree the inference that the items in the black garbage bag came from the Saint Joseph's Street house would be stronger if proof of residency had been located in the same bag, in a bag of the same color as the other bags on the curb, or if police had observed the black bag being placed on the curb. However, it does not follow that the inference was unreasonable or otherwise impermissible. To the contrary, we are satisfied that one reasonable inference that could be drawn from the presence of a garbage bag on a curb outside of a house is that the garbage bag came from that house. It is not necessary to draw an innocent inference when there is another reasonable inference that supports probable cause. See State v. Nieves , 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125 (in analogous context of probable cause for arrest). Any additional facts that might link the bag to the house or to a resident therein would merely go to the weight of the evidence, to be considered as part of the totality of the circumstances.
5. Method of Obtaining Electrical Records
¶21 Johnston next contends that the electrical records were unlawfully obtained. Specifically, he argues that obtaining a federal administrative subpoena pursuant to 21 U.S.C. § 876 improperly circumvents the probable cause requirement under Wisconsin state law for obtaining a subpoena pursuant to WIS. STAT. § 968.135 (2017-18). As the State points out, however, the last sentence of § 968.135 states: "This section does not limit or affect any other subpoena authority provided by law." Federal administrative subpoena authority is authority provided by law; therefore, obtaining materials pursuant to a federal administrative subpoena does not violate § 968.135.
6. Significance of Electrical Records
¶22 Johnston also asserts "the fact that [his] average energy use was approximately double that of the 'comparable' residences alone is insufficient to establish probable cause," citing Loranger , 250 Wis. 2d 198, ¶23. Once again, Johnston's argument is misplaced because the probable cause determination here was not based solely upon his energy usage. Rather, the energy usage was considered in conjunction with the anonymous tip and two separate trash pulls that yielded evidence of a marijuana-growing operation.
¶23 Johnston further claims the electrical usage information should have been suppressed under a Franks-Mann analysis. Under Franks v. Delaware , 438 U.S. 154 (1978), a court is obligated to suppress evidence obtained from a search if, at an evidentiary hearing, the defendant can establish by a preponderance of the evidence that the affidavit in support of the search warrant contained false statements made intentionally or with reckless disregard for the truth and that the false statements are necessary to a finding of probable cause. Id. at 155-56. State v. Mann , 123 Wis. 2d 375, 385-86, 388, 367 N.W.2d 209 (1985), extends the Franks rule to the omission of known and undisputed information that would be critical to an impartial judge's ability to determine probable cause.
¶24 Johnston maintains that the search warrant affidavit in this case omitted critical facts about comparable properties that would undermine a probable cause determination. In particular, he asserts the affidavit should have noted that the Saint Joseph's Street house contained an in-ground swimming pool and should have included energy usage figures from other neighborhood properties with swimming pools.
¶25 However, Johnston has presented no evidence as to how much energy an in-ground swimming pool would typically use, or how much energy other properties in the neighborhood with pools actually used. Furthermore, the energy-use data were from June 2015 to May 2016, spanning the summer and winter. Johnston's theory that his swimming pool would require a large amount of energy to run would not explain the consistently high-energy use for his property during the cold Brown County winter, when an outdoor pool would likely not be used, as well as the summer when the pool would normally be used and perhaps heated. Therefore, we are not persuaded that either the existence of Johnston's swimming pool or the energy usage figures for other neighborhood properties with swimming pools were pieces of information critical to the probable cause determination in this case. We conclude the circuit court properly denied Johnston's Franks-Mann contention.
7. Totality of the Circumstances
¶26 Finally, Johnston asserts that "the sum of a litany of zeroes still equates to zero." He essentially argues that, if none of the individual pieces of information in the search warrant affidavit were sufficient to support a finding of probable cause in and of themselves, then they also fail to do so collectively. We disagree. An inference that might be weak if based solely upon a limited set of facts can be bolstered when considered in light of additional facts. See State v. Williams , 2001 WI 21, ¶22, 241 Wis. 2d 631, 623 N.W.2d 106 (noting that a totality of the circumstances test must weigh both the quantity and quality of the known information).
¶27 Here, the anonymous tip that Johnston was growing marijuana in his basement might be weak on its own, absent any information on how the tipster came by his or her information or any indication that the tipster had provided reliable information in the past. However, the subsequent corroboration of portions of the tip increased its reliability as a whole.
¶28 Similarly, the links between Johnston and the marijuana evidence recovered in either of the two trash pulls might be weak on their own. However, it was improbable that someone else might have tossed garbage bags containing such evidence in front of two different residences linked to Johnston, particularly given the tip that Johnston was growing marijuana and the high-energy usage at the second residence over the one-year period. Thus, the evidence from the garbage bags strongly supported the inference that Johnston was involved in a marijuana-growing operation.
¶29 Last, the high-energy usage at the Saint Joseph's Street house might mean little on its own. However, when considered in the context of the tip that Johnston was growing marijuana, and the recovery of evidence consistent with a marijuana-growing operation from garbage bags outside two different residences linked to Johnston, the high-energy usage was a significant corroborating factor. Moreover, the fact that the high-energy usage had continued for one year lent weight to the probability that the operation would still be ongoing at the time police searched the Saint Joseph's Street house.
¶30 In sum, the totality of the circumstances set forth in the search warrant affidavit was not clearly insufficient to support probable cause. Therefore, the circuit court properly refused to suppress the evidence seized pursuant to the search warrant.
B. Assistance of Counsel
¶31 Johnston also argues that his trial counsel was ineffective for failing to file the original suppression motion in a timely manner and for failing to fully develop the claims later raised in Johnston's postconviction motion. However, we have already explained why each of Johnston's claims fails on its merits. Furthermore, because both this court and the circuit court addressed the merits of the suppression motion, Johnston was not harmed by counsel's failure to file the suppression motion earlier. Therefore, Johnston cannot establish prejudice arising from any of his ineffective assistance claims. See State v. Swinson , 2003 WI App 45, ¶58, 261 Wis. 2d 633, 660 N.W.2d 12 (requiring a defendant claiming ineffective assistance of counsel to show both deficient performance by counsel, and prejudice resulting from that deficient performance); State v. Sholar , 2018 WI 53, ¶¶44-45, 381 Wis. 2d 560, 912 N.W.2d 89 (citing Strickland v. Washington , 466 U.S. 668, 694 (1984)) (requiring a defendant to prove prejudice by demonstrating there is a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different).
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2017-18).